### In re FIXEN et al.

### FORGY v. FIELD et al.

(Circuit Court of Appeals, Ninth Circuit. May 21, 1900.)

No. 582.

1. BANKRUPTCY—PREFERENCES—PAYMENT OF MONEY.
   A payment of money on account in the ordinary course of business is a transfer of property, and, if made while the debtor is insolvent, and within four months before he becomes bankrupt, constitutes a preference, within the meaning of Bankr. Act 1898, § 60.

2. SAME—PROOF AND ALLOWANCE OF CLAIMS—PREFERRED CREDITORS.
   Under section 57g, providing that "the claims of creditors who have received preferences shall not be allowed unless such creditors shall surrender their preferences," a creditor who has received a partial payment of his debt while the debtor was insolvent, and within four months before the latter became bankrupt, cannot prove the balance of his debt as a claim against the estate of the bankrupt without surrendering the preference so received. notwithstanding the fact that the payment was made in the ordinary course of business, and that the creditor had no knowledge or reasonable cause to believe that the debtor was insolvent, or that a preference was intended.

Appeal from the District Court of the United States for the Southern District of California.

This cause comes before this court upon the alleged error of the district court for the Southern district of California, sitting as a court of bankruptcy, in allowing the claim of Marshall Field & Co. against the estate of Fixen & Co., bankrupts. It appears that on May 29, 1899, Fixen & Co. were indebted to Marshall Field & Co., appellees herein, in the sum of $745.61 for merchandise

sold and delivered to said Fixen & Co. by the appellees, and that on that day the appellees received from Fixen & Co., in the ordinary course of business, the sum of $428.45 on account of said indebtedness, leaving a balance of $317.16 still due the appellees. Shortly thereafter the appellees again sold merchandise to the said Fixen & Co. to the amount of $232.50, making a total indebtedness of $549.66. It has been shown that Fixen & Co. were insolvent on May 29, 1899, when they made the payment on account to the appellees, and that said payment was made within four months of the filing of the petition in bankruptcy. The court below allowed the claim of appellees, as creditors of the bankrupts, for $549.66. The trustee of the bankrupt estate, appellant herein, objected to this allowance upon the ground that the bankrupts had, while insolvent, given a preference to the claimants, Marshall Field & Co., by said payment on account; that said claimants had not surrendered any portion of said payment to the bankrupt estate or to the trustee thereof, and the enforcement of said transfer and payment would give to said claimants a greater percentage of their debt than to other creditors of the same class. Upon this contention the trustee brings the matter to this court, and asks for a reversal of the judgment of the court below.

E. T. Dunning and I. H. Johnston, for appellant.
Charles Udell, L. L. Shelton, and H. G. W. Dinkelspiel, for appellees.
Henry Ach, amicus curiæ.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). The question to be determined in this case is whether a payment made on account by an insolvent debtor, in the ordinary course of business, within four months prior to his adjudication in bankruptcy, where it does not appear that the creditor receiving the payment had reasonable cause to believe that it was intended as a preference, constitutes a preference, under the bankruptcy act, that will prevent the allowance of the creditor's claims for the balance of the account. Section 60 of that act provides (30 Stat. 562):

"(a) A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

It has been questioned whether a payment of money in the ordinary course of business can be considered a transfer of property. In section 1 of the same act, however, the word "transfer" is defined as including "the sale and every other and different mode of disposing of or parting with property, or the possession of property, absolutely or conditionally, as a payment, pledge, mortgage, gift, or security." As the word "property" is legally understood to include every class of acquisitions which a man can own or have an interest in, it must certainly cover money; and the payment of money, therefore, by an insolvent to an unsecured creditor within the statutory period must be considered a transfer of his property, constituting a preference, under section 60a of the act of bankruptcy, the enforcement of which transfer would allow one creditor to obtain a greater percentage of his debt than any other creditors of the same class. How is such preference to be dealt with? Subdivision "b" of section 60 of the same act provides:

"If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

It is not contended that the appellees herein believed or had any knowledge that the payment from the bankrupt was intended to give to them a preference, or that it would, in effect, be a preferential transfer. The trustee could not, therefore, recover upon the ground stated in subdivision "b." But the bankruptcy act provides, in section 57g, that "the claims of creditors who have received preferences shall not be allowed unless such creditors shall surrender their preferences." The appellees have not surrendered their preference, yet seek to have their claim allowed for the balance due them from the bankrupt, upon the contention that they received the payment from the bankrupt in good faith, without knowledge of its insolvency, continued to sell goods to the bankrupt firm in the usual course of business, and that the acceptance of said payment on account should not be held as a preference which would prevent the allowance of their claim. In the former bankruptcy act, of 1867, the belief of the creditor as to the intention of the debtor in giving a preference was considered, when the surrender of such preference was required. In section 23 it was provided:

"Any person who * * * shall have accepted any preference, having reasonable cause to believe that the same was made or given by the debtor contrary to any provision of this act, shall not prove the debt or claim * * * until he shall have first surrendered to the assignee all property, money, benefit, or advantage received by him under such preference."

But in the act of 1898 congress omitted from section 57g any reference to cause for belief on the part of the creditor, and stated in concise and unmistakable terms that "the claims of creditors who have received preferences shall not be allowed unless such creditors shall surrender their preferences." It is evident that the purpose or intent of the parties in giving or receiving a preference was not intended to be considered in this section, but the effect of the preference in the benefit or advantage which it would give to one creditor over another. No penalty is imposed on the creditor by the section, but merely an option on the part of a creditor who has received a preference to keep what he has received, and take no dividends from the bankrupt's estate, or to surrender his preference and share equally with the other creditors in the distribution of the estate. The fundamental principle of the act is a real and effectual equality in the distribution of the bankrupt estate. Lowell, Bankr. p. 43. In the disposition of property among creditors, equality is equity. Bank v. Sherman, 101 U. S. 403, 406, 25 L. Ed. 866. To accomplish the purpose of the statute, the court exercises its equitable jurisdiction in dealing with preferences. The right to prefer creditors is an infirmity still remaining in the body of the common law. It is contrary to the letter and spirit of the maxim that equality is equity. Paper Co. v. Robbins, 151 Ill. 632, 38 N. E. 153; 11 Am. & Eng. Enc. Law (2d Ed.) 186. In this view of the scope and purpose of the act, it certainly cannot be considered inequitable to require one who has received an undue portion of the estate,

no matter if innocently, to surrender that advantage before participating in further distributions of the estate with those who have not received such preference. Coll. Bankr. p. 286.

It is urged very earnestly on behalf of the appellees, and by counsel who have appeared as amici curiæ, that this interpretation of the act will be disastrous to credit; that it will unsettle business, and render mercantile transactions so uncertain and insecure that the country at large will suffer by it. It is further contended that congress did not intend by this act to interfere with or disturb the ordinary course of business of the country; and, in support of a construction of the statute that will avoid such supposed consequences, numerous authorities are cited, which may be summed up in the rule that "statutes will be construed in the most beneficial way which their language will permit, to prevent absurdity, hardship, or injustice." Suth. St. Const. § 324. The first observation pertinent to the consideration of this rule is that the province of construction lies wholly within the domain of ambiguity. Hamilton v. Rathbone, 175 U. S. 414, 421, 20 Sup. Ct. 155, Adv. S. U. S. 155, 44 L. Ed. ——. It must therefore appear that the statute is ambiguous, and thus open to construction. "The considerations of evil and hardship may properly exert an influence in giving a construction to a statute when its language is ambiguous or uncertain and doubtful, but not when it is plain and explicit. The same may be said of the consideration of convenience, and, in fact, of any consequences. If the intention is expressed so plainly as to exclude all controversy, and is one not controlled or affected by any provision of the constitution, it is the law, and courts have no concern with the effects and consequences. Their simple duty is to execute it." Suth. St. Const. § 324. That the bankrupt act is ambiguous and uncertain in many of its provisions cannot be denied. But we are of the opinion that the particular provisions under consideration are reasonably clear and certain. Section 57g provides that the claims of creditors who have received "preferences" shall not be allowed unless such creditors shall surrender their "preferences." There is no ambiguity in this provision, and no uncertainty as to its purpose. When a creditor presents a bona fide claim against the bankrupt estate, the question to be determined is, has the creditor received a "preference" in his dealings with the bankrupt? If he has, the claim cannot be allowed. If he has not, it must be allowed. Then the question arises, what is the meaning of the word "preference"? If we turn to section 60a, we find the word "preference" defined, and it is there declared to mean "a transfer" by the bankrupt "of any of his property," where the effect of the enforcement of such a "transfer" will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. This definition fits very closely into section 57g, and points out still more distinctly the preferred claims that are disallowed. But, to understand accurately the character of the transaction that will amount to a preference, we must look for the meaning of the words "transfer of property." This meaning is found in paragraph 25 of section 1 of the act, where a "payment" is explicitly made one of the methods of transferring property. With respect to the question under consideration,

the statute itself has furnished us with this information: (1) That a payment of money is a transfer of property; (2) a transfer of property by an insolvent debtor, whereby his creditor obtains a greater percentage of his debt than any other creditor of his class, is a preference; (3) a claim of a creditor who has received a preference shall not be allowed, unless such creditor shall surrender his preference. The word "preference," as used in paragraph 2 of section 3a, and in section 60b, has no other meaning than that declared in section 60a. It is true that in those other sections a preference qualified by certain other conditions produces other consequences, but the consequences clearly follow from the other conditions, and not from any different meaning attached to the word "preference."

It is to be further observed that the construction which the appellees give to section 57g is the same as was given to section 23 of the act of March 2, 1867 (14 Stat. 517, 528). But in that section it was provided that the creditor should not prove his claim if he had accepted a preference, "having reasonable cause to believe that the same was made or given by the debtor" contrary to the provisions of that act, until he had surrendered the preference. This construction would require that the creditor's claim should be allowed under the present act, unless it should be established that the creditor had reasonable cause to believe that the preference was made or given by the debtor contrary to the provisions of the act. To give the act this construction, we must do that which congress has failed to do, namely, interpolate the qualifying provision of the former act. This we cannot do. As was said by the supreme court in Bank v. Sherman, supra:

"We cannot interpolate what is claimed. Such a function is beyond the sphere of our power and duty. It is our business to execute the law as we find it, and not to make or modify it."

But, assuming that this reference to different provisions of the present act, and the comparison made with the corresponding provisions of the former act to ascertain the meaning of the statute, demonstrate that it is open to construction, what follows? As we have read the act, is its meaning absurd? No such claim is made, and could not be sustained if urged. Does this meaning or interpretation of the act work hardship or injustice? It is claimed that it does, and that, by interfering with the ordinary transactions incident to trade upon credit, the administration of the law as thus interpreted will destroy the business of the country. This is by no means clear. The creditor is not compelled to surrender a payment made to him on account, in the ordinary course of business, unless he has reason to believe that his debtor is insolvent and that the payment is a preference. If the creditor is innocent in the transaction, he has his option to retain the payment and waive his claim to the balance of the account, or he may surrender the payment and present his claim for the whole account. He will do that which will be to his best interest, and his loss, in any event, will be one of degree. It is a well-known fact that the credit system of trade has its limitations and restrictions adjusted as far as possible to the contingencies of loss by insolvency, and that the possibility of insolvency and its attending losses is a continual factor in the ordinary

business of the country, which the bankrupt act is expected to adjust and equalize among all creditors by an equitable and just distribution and settlement of the insolvent estate. It would seem, therefore, that, instead of destroying business, the interpretation we give to the act will be to the advantage of legitimate credit, in placing all creditors as nearly as possible on an equal footing. This view of the statute has been taken in the following cases, in which the question now under consideration has been fully and ably considered: In re Knost (D. C.) 1 Nat. Bankr. N. 403; In re Conhaim, 2 Nat. Bankr. N. 148, 97 Fed. 923; In re Wise (D. C.) 2 Nat. Bankr. N, 151. In the case of Electric Co. v. Worden, 3 Am. Bankr. R. 634, 39 C. C. A. 582, 99 Fed. 400, the circuit court of appeals for the Seventh circuit reaches the same conclusion. The Ft. Wayne Electric Company, being indebted to the Columbus Electric Company, gave three notes covering the indebtedness, maturing upon various dates. After the maturity of the first note the creditor received from the debtor a partial payment thereon, in the regular course of business, and without reasonable cause to believe that the debtor was insolvent, and without an intent to obtain an unlawful preference. Shortly afterwards involuntary proceedings were instituted against the debtor by other creditors, and it was adjudged bankrupt. The Columbus Electric Company filed its claim for the balance due upon the notes. The district court ordered that, if the said creditor should surrender to the trustee the sum received from the debtor as a partial payment, then the full amount of its claim would be allowed as an unsecured claim, but, upon the refusal of the creditor to repay said amount, its claim should be disallowed and expunged from the list of claims upon the trustee. The case was appealed to the United States circuit court of appeals. In expressing the opinion of the court, after discussing the sections of the act herein construed, Judge Jenkins said:.

"The bankrupt here intended to prefer the appellant, in the sense that, while insolvent, it sought to give an advantage over other creditors. It was received, to be sure, innocently, and without knowledge of that intent, but the payment none the less worked a preference. It gave to the appellant an undue advantage over other creditors, and, while the act will not permit a recovery by the trustee of the payment because it was received innocently, it none the less remains that the meaning of the act is that, if the appellant seek further payment out of the estate of the bankrupt, he shall share equally with other creditors with respect to his claim. That can only be accomplished by a surrender of the preference received as a condition of further payment out of the bankrupt estate. This construction, as we think, works out the highest equity between creditors. It may be difficult to reconcile the various phrases used in the act, but the construction which we place upon the section gives to the language therein employed its natural meaning."

This opinion expresses our views upon this subject. The judgment of the district court is reversed, and the cause remanded to said court, with directions to disallow the entire claim of Marshall Field & Co., and expunge it from the list of claims against the bankrupt estate.