TRI–LAKES S. S. CO. v. COMMISSIONER OF INTERNAL REVENUE, and four other cases.

Nos. 9820–9824.

Circuit Court of Appeals, Sixth Circuit.

Jan. 22, 1945.

Thomas H. Adams, of Detroit, Mich. (Sherwin A. Hill, Thomas H. Adams, and Edward H. Yost, all of Detroit, Mich., on the brief), for petitioners.

S. Dee Hanson, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, J. Louis Monarch, and Hilbert P. Zarky, all of Washington, D. C., on the brief) for respondent.

Before SIMONS, ALLEN, and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

The determinative question in each of these petitions for review, is whether the term "property" includes money within the purview of § 112(b)(6) of the Internal Revenue Code 26 U.S.C.A. Int.Rev.Code, § 112(b)(6), which reads:

"(6) Property received by corporation on complete liquidation of another. No gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation. * * *"

The taxes in controversy are income and excess profits taxes for the year 1941, determined as a deficiency in the return of the Tri-Lakes Steamship Company, and determined transferee liabilities of the other four petitioners. The facts are all stipulated and as to them there is no controversy. The Tri-Lakes Steamship Company, a Michigan Corporation engaged in the operation of vessels upon the Great Lakes, purchased on May 1, 1938, all of the outstanding capital stock of the Leathem D. Smith Steamship Company for $29,000, and owned such stock until the dissolution of the latter on November 11, 1941. In 1940 the Steamer "Sinaloa," which was the principal asset of the Smith Company, was so damaged by storm that it was abandoned to its underwriters, and on March 17, 1941, the subsidiary received insurance upon the vessel in the amount of $260,416.03. After the loss of its steamer the subsidiary was unable to carry on its business, and so its stockholders terminated its corporate existence as of November 11, 1941. In pursuance of its plan of liquidation the Tri-Lakes Company surrendered all stock in its subsidiary for cancellation, and received from it cash in the amount of $207,000, of which $173,240.43 was out of earnings and profits of the subsidiary for the taxable year, the subsidiary retaining an amount sufficient to cover its income tax liability and a possible deficiency in excess profits taxes. Tri-Lakes, in its income and declared value excess profits tax returns, treated the difference between the cost to it of its stock in the subsidiary and the amount received by it upon the liquidation, as a tax free distribution under the provisions of § 112(b)(6). The Commissioner asserted a deficiency on the ground that the transaction did not qualify as non-taxable, for the sole reason that money was not property within the meaning of the section, and added the amount to the taxpayer's income.

It is conceded that the individual petitioners were transferees of the Tri-Lakes Steamship Company and liable for portions of the tax if it is liable. All filed with the Tax Court petitions for redetermination, asserting error by the Commissioner in two respects—first, that the transaction was tax free under the provisions of § 112(b)(6), and, second, that if not a tax free transaction the Commissioner erred in not allowing a credit to the extent of 85% of that portion of the distribution which represented earnings and profits of the subsidiary for the year 1941, under the provisions of § 26(b) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 26(b). The Tax Court sustained the Commissioner in both

972

respects, holding that money was not property within the meaning of § 112(b)(6), and that the credit provided by § 26(b) applied to ordinary but not to liquidating dividends.

 It is axiomatic that the words of a statute are to be read in their natural and ordinary sense, unless some strong reason to the contrary appears. Miller v. Robertson, 266 U.S. 243, 45 S.Ct. 73, 69 L.Ed. 265. Considering the natural and ordinary connotation of the term "property," there is no doubt that it is one of broad application, sufficiently comprehensive to include both tangible and intangible property, and so, money. Webster's New International Dictionary; 50 Corpus Juris, 729; Pirie v. Chicago Title & Trust Co., 182 U.S. 438, 443, 21 S.Ct. 906, 45 L.Ed. 1171; People v. Williams, 24 Mich. 156, 9 Am.Rep. 119; In re Fixen, 9 Cir., 102 F. 295, 50 L.R.A. 605; Fidelity & Deposit Co. v. Arenz, 290 U.S. 66, 54 S.Ct. 16, 78 L.Ed. 176.

We turn, then, to the history of § 112(b)(6) to determine whether it discloses Congressional intent to use the term in other than its natural and ordinary sense. Prior to the Revenue Act of 1935 there was no provision permitting the liquidation of a wholly owned subsidiary without recognition of gain or loss. 1 Mertens, Law of Federal Income Taxation, 559. Such a provision was, however, included in the Revenue Act of 1935. As originally proposed by a Senate amendment to H. R. 8974, the language of the section became as follows:

"(6) No gain or loss shall be recognized upon the receipt by a corporation of property or money distributed in complete or partial liquidation of another corporation, if the corporation receiving such property owns at least 80 per centum of the voting stock of such other corporation."

This was, however, altered prior to passage, so that the first clause read:

"No gain or loss shall be recognized upon the receipt by a corporation of property (*other than money*) distributed in complete liquidation of another corporation." 26 U.S.C.A. Int.Rev.Acts, page 802.

However, in the Revenue Act of 1936 the Congress revised the language of § 112(b)(6), 26 U.S.C.A. Int.Rev.Code, § 112(b)(6), by omitting the parenthetical qualifying words "other than money," and such omission has been continued in this section in all the Revenue Acts to date, including

the Act applicable to the present case. It would seem, therefore, that such amendment clearly indicates that it was the intention of Congress to include distributions of money within the provisions of § 112(b)(6).

 It has long been a recognized rule of statutory construction that the omission, by amendment, of qualifying language, discloses an intent to include the class previously excluded by the omitted qualifying language. Pirie v. Chicago Title & Trust Co., supra, 182 U.S. 438 at page 448, 21 S.Ct. 906, 45 L.Ed. 1171; Dunn v. Ganz, 3 Cir., 129 F. 750; Richard v. National City Bank, D.C., 6 F.Supp. 156. This was the view of the Chief Counsel for the Bureau of Internal Revenue in his Memorandum No. 19435 which appears at page 176 of Cumulative Bulletin 1938-1, an opinion which has not since been withdrawn. His opinion was rested upon the fact that the same legislative body (the Senate) which had originally proposed to apply the principle to all liquidating distributions in 1935, in 1936 struck out the qualifying words "other than money." This conclusion was strengthened by the fact that in the interval the Circuit Court of Appeals for the Ninth Circuit, in Halliburton v. Commissioner, 78 F.2d 265, decided June 3, 1935, had held that the term "property," as used in § 203 (b)(4) of the Revenue Act of 1924, 26 U.S. C.A. Int.Rev.Acts, page 5, included money, and no apparent reason suggested itself why money, paid for stock within the contemplation of that section, should not be considered property. It was therefore reasoned that if the term "property" includes money when used in a section of the Act exempting from tax an exchange of property for stock, no distinguishing factor leads to a conclusion that the term "property" in § 112(b)(6), relating to exchanges of stock for property in liquidation proceedings, does not also include money. To hold otherwise would unjustly penalize corporations owning property of a nature which could not be distributed as a liquidating dividend. We find this reasoning persuasive.

It is not without importance, moreover, that the Senate Committee on Finance, in discussing § 115(h) of the Revenue Bill of 1938, expressed the view that §§ 112(b)(6) and (7) permit the distribution of property (including money) in addition to stock or securities, without the recognition of gain to the distributee, so that proposed changes

in § 115(h) were in the interest of added clarity. Cumulative Bulletin 1939-1, part 2, page 792. While this observation was not within the pre-enactment history of § 112(b)(6), yet it was an observation of a highly specialized and informed committee of the Congress dealing with tax matters, and possessing a large measure of continuity. It was doubtless conversant with the purpose of the original section and the amendments made thereto. Walling v. American Needlecrafts, 6 Cir., 139 F.2d 60.

Notwithstanding the history of the section thus recited, the Tax Court sustained the determination of the Commissioner that a gain was to be recognized where the distribution was in money, basing its decision solely upon Stimson Mill Co. v. Commr., 46 BTA 141. In that case its predecessor, the Board of Tax Appeals, had construed the statute as having no application where money alone is distributed, and permitted loss by a distributee corporation to be recognized. The Commissioner did not acquiesce in the decision and petitioned the Court of Appeals for the Ninth Circuit, for review. The question here involved was not there decided, but affirmance of the decision of the Board of Tax Appeals, on another ground, led the Tax Court to decision in the present case. The Commissioner defends its present holding in order to protect the revenue, notwithstanding the inconsistency of his present position with that taken in the Stimson Mill Co. case. It is plain, however, both from brief and argument, that he is more interested in having the question authoritatively settled than he is in the manner of its settlement,—it would be intolerable for the treasury to be compelled to withhold recognition of a gain and yet obliged to recognize a loss under similar circumstances. The argument that he finds himself compelled to advance, however, in support of the Tax Court decisions, lacks much in impressiveness. It may be, he says, that the deletion of the parenthetical phrase by the Act of 1936, was considered as not accomplishing any change in meaning, since its language may have been viewed merely as surplusage. No change of importance was therefore intended by dropping the tautological parenthetical phrase. It has not been our experience that Congressional draftsmen are to such extent perfectionists that amendments seem to them to be required for the mere purpose of eliminating phrasing that, while clear enough to ordinary men, may yet seem to the hypercritical, redundant. We are compelled to view the elimination of the exclusion phrase as a purposeful change in the law, rather than as a result of mere inadvertence or an effort to achieve rhetorical precision.

More important is the Commissioner's argument that the exclusion of money from the scope of the word "property" is required so that gains of the distributee shall not, upon liquidation of a subsidiary, completely escape taxation. In the case of physical property the realization of gain or loss is merely postponed until there has been a disposition of the property by the parent corporation. If a gain is not recognized where the distribution is in money, then, he says, it will never be taxed, because in the case of money the gain is realized at the moment of distribution. This argument, however, overlooks the fact that gain or loss is realized by the subsidiary when its assets have been converted into cash, and so is taxable to or deductible by the subsidiary upon realization. In the present case, gain was realized by the subsidiary, included in its return, and the tax thereon paid.[1] It is not to be inferred, in the face of the language of the section, that the Congress intended to tax the liquidated corporation, and likewise its distributee, on gains derived from the same transaction. It is true, of course, that hypothetical cases may be suggested wherein what is apparently a gain to the subsidiary is really a loss to the parent, or where a loss to the subsidiary is a gain to the parent. Undoubtedly, in the difficult task of framing a taxing statute, with its necessarily complicated provisions, de-

---

[1] It is difficult to see any distinction in the present case between a liquidation wholly in money and one wholly in property, except that a different entity would be liable for the tax. Section 113(a)(15), 26 U.S.C.A. Int.Rev.Code, § 113(a)(15), requires that property received in liquidation takes the same cost basis in the hands of the transferee as it had in the hands of the transferer. Had the subsidiary liquidated by the transfer of the vessel prior to its destruction, the gain or loss to the parent would have been the difference between its cost to the subsidiary and the avails of the insurance. This precise difference measured the gain or loss to the subsidiary when its property was converted to cash, prior to the transfer.

signed to prevent tax avoidance on the one hand and unfairness on the other, the impact of a tax will not always fall with equal fairness upon all taxpayers. We are not, however, concerned with the wisdom of a tax law, but only with its meaning, express or clearly implied. The term "property" in § 112(b)(6) of the 1936 Act includes money, and its distribution in liquidation is a tax free transaction. This conclusion makes it unnecessary to decide other questions in the case.

The decisions of the Tax Court are reversed and the cases remanded to the Tax Court for further proceedings in conformity herewith.