678

INTERNATIONAL INVESTMENT CORPORATION, PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15205.    Promulgated October 25, 1948.

*David Stock, Esq.*, for the petitioner.
*Francis X. Gallagher, Esq.*, for the respondent.

#### OPINION.

KERN, *Judge*: Respondent determined a deficiency in the income
tax of petitioner and its affiliated companies for the year 1942 in the
amount of $16,554.98. Practically all of this deficiency resulted from
respondent's determination that no recognizable loss occurred upon
the distribution in liquidation made to petitioner during the taxable
year by the Portage Water Co., a wholly owned subsidiary of peti-
tioner. Petitioner alleges that respondent erred in determining that
no recognizable loss occurred, and in disallowing a loss from the dis-
solution and liquidation of its subsidiary from and to the extent of
a net capital gain from other transactions as claimed in its consolidated
return.

A stipulation of facts was filed by the parties and we find the facts
to be as stipulated.

Petitioner, during the taxable year, was a corporation organized
under the laws of the State of Delaware. The consolidated income
tax return for 1942 was filed by petitioner and its affiliated corpora-
tions with the collector of internal revenue for the fifth district of
New Jersey.

The Portage Water Co., a Pennsylvania corporation engaged in the
business of supplying water to the public in the Borough of Portage,
Pennsylvania, was, and had been since 1932, a wholly owned subsidiary
of petitioner. The adjusted basis to petitioner of the stock of the
Portage Water Co. (hereinafter referred to as Portage) during the
taxable year was $278,680.02.

On October 1, 1942, Portage sold all of its assets, except cash, insur-
ance deposits, and prepaid insurance, to the municipality it served.
On October 14, 1942, petitioner executed and delivered to Portage an
agreement and consent to the voluntary dissolution of Portage and a

certificate of election to dissolve Portage. On October 15, 1942, the board of directors of Portage adopted the following resolutions:

WHEREAS, this Company has sold all of its operating assets and it now holds all of its property in idle cash; and

WHEREAS, this Company does not contemplate entering into any new business; and

WHEREAS, General Water Gas & Electric Company, the holder of all of the outstanding shares of stock of this Company, has agreed and consented to the voluntary dissolution of this Company and to the winding up of its affairs

NOW, THEREFORE, BE IT

RESOLVED, that this Company be dissolved; and

RESOLVED, that H. Williams, Jr., Vice-President and A. D. McNab, Secretary of this Company be and hereby they are authorized and directed to cause to be delivered to and filed with the Department of State of the Commonwealth of Pennsylvania a Certificate of Election to Dissolve and that said officers be and further hereby are directed to do each and every act or thing which may be necessary or convenient in order that the intent of these resolutions may be fully carried into effect; and

RESOLVED, that a copy of the form of said Certificate of Election to Dissolve and of the Agreement for voluntary dissolution executed by General Water Gas & Electric Company, all in the form presented to this meeting, be marked for identification by the Secretary of this Company and filed in its document files.

On motion duly made and seconded the following preambles and resolutions were unanimously adopted:

WHEREAS, the Board of Directors of this Company has adopted a resolution that this Company should dissolve and has authorized the filing with the Department of State of the Commonwealth of Pennsylvania a Certificate of Election to Dissolve; and

WHEREAS, General Water Gas & Electric Company is the owner of all of the outstanding stock of this Company and has delivered to this Company an Agreement and consent to the voluntary dissolution of this Company; and

WHEREAS, it is desirable that this Company should forthwith declare and pay to General Water Gas & Electric Company a dividend in partial liquidation, at the rate of $290 per share, or in the aggregate sum of $87,000;

NOW, THEREFORE, BE IT

RESOLVED, that this Company shall pay to General Water Gas & Electric Company on the 15th day of October, 1942, the sum of $87,000, such sum so paid to General Water Gas & Electric Company, its sole stockholder, constituting a partial distribution made by this Company in liquidation, at the rate of $290 per share on the 300 outstanding shares of this Company; and

RESOLVED, that the proper officers of this Company be and hereby they are authorized and directed to do each and every act or thing and to make such payments as may be necessary in order to effect the payment of said dividend so to be made in partial liquidation.

On October 15, 1942, the balance sheet of Portage indicated the following assets and liabilities:

ASSETS:

| | |
|---|---|
| Cash | $121,920.27 |
| Special cash deposits | 192.84 |
| Prepaid expenses and deferred charges | 1,110.12 |
| Total | 123,223.23 |

LIABILITIES:

| | |
|---|---|
| Accounts payable | $450.00 |
| Accrued taxes | 439.98 |
| Other accrued liabilities | 97.77 |
| Capital stock | 30,000.00 |
| Capital surplus | 94,473.54 |
| Earned surplus | (2,238.06) |
| Total | 123,223.23 |

All of the liabilities of Portage as above set out were paid by Portage.

On November 30, 1942, the Public Service Commission of Pennsylvania approved the dissolution of Portage.

Pursuant and incident to its dissolution, all of the assets of Portage, consisting solely of cash, were paid over to petitioner as follows:

| | |
|---|---|
| October 15, 1942 | $87,000.00 |
| December 17, 1942 | 20,000.00 |
| January 29, 1943 | 11,364.58 |
| Total | 118,364.58 |

These facts, which are a rather full summary of the stipulation, may be stated more succinctly as follows: Portage, the wholly owned subsidiary of petitioner, sold its assets, dissolved, and distributed the cash resulting from the sale (together with other cash), by distributions extending over into the year after the taxable year, to petitioner in cancellation of the Portage stock held by petitioner.

The question immediately posed by these facts is whether petitioner's loss on the transaction is recognizable under the provisions of sections 115 (c) and 112 (b) (6) of the Internal Revenue Code.[1] The respond-

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

    &#42;        &#42;        &#42;        &#42;        &#42;

  (c) DISTRIBUTIONS IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. &#42; &#42; &#42;

SEC. 112. RECOGNITION OF GAIN OR LOSS.

    &#42;        &#42;        &#42;        &#42;        &#42;        &#42;        &#42;

  (b) EXCHANGES SOLELY IN KIND.—

    &#42;        &#42;        &#42;        &#42;        &#42;        &#42;        &#42;

  (6) PROPERTY RECEIVED BY CORPORATION ON COMPLETE LIQUIDATION OF ANOTHER.—No gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation. For the purposes of this paragraph a distribution shall be considered to be in complete liquidation only if—

    (A) the corporation receiving such property was, on the date of the adoption of the plan of liquidation, and has continued to be at all times until the receipt of the property, the owner of stock (in such other corporation) possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and the owner of at least 80 per centum of the total number of shares of all other classes of stock (except nonvoting stock which is limited and preferred as to dividends), and was at no time on or after the date of the adoption of the plan of liquidation and

ent contends that the latter section of the code precludes any recognition of a loss resulting to petitioner from the transaction in question. Petitioner argues to the contrary and contends that section 112 (b) (6) is not applicable to the facts of the instant case.

The first and most important point in petitioner's argument is that the word "property" as used in the phrase "property distributed in complete liquidation of another corporation" appearing in section 112 (b) (6) does not include money; and only money was distributed to petitioner upon the dissolution and liquidation of its subsidiary.

The word "property" is sufficiently comprehensive to include money, *Pirie* v. *Chicago Title & Trust Co.*, 182 U. S. 438, 443; and where the word "property" is used in section 112 (b) of the Internal Revenue Code without the parenthetical phrase "(other than money)," it may include money, *Halliburton* v. *Commissioner*, 78 Fed. (2d) 265; *Cyrus S. Eaton*, 37 B. T. A. 715. The question presented is whether "property" as used in section 112 (b) (6) includes money.

until the receipt of the property the owner of a greater percentage of any class of stock than the percentage of such class owned at the time of the receipt of the property ; and

(B) no distribution under the liquidation was made before the first day of the first taxable year of the corporation beginning after December 31, 1935 ; and either

(C) the distribution is by such other corporation in complete cancellation or redemption of all its stock, and the transfer of all the property occurs within the taxable year ; in such case the adoption by the shareholders of the resolution under which is authorized the distribution of all the assets of such corporation in complete cancellation or redemption of all its stock, shall be considered an adoption of a plan of liquidation, even though no time for the completion of the transfer of the property is specified in such resolution ; or

(D) such distribution is one of a series of distributions by such other corporation in complete cancellation or redemption of all its stock in accordance with a plan of liquidation under which the transfer of all the property under the liquidation is to be completed within three years from the close of the taxable year during which is made the first of the series of distributions under the plan, except that if such transfer is not completed within such period, or if the taxpayer does not continue qualified under subparagraph (A) until the completion of such transfer, no distribution under the plan shall be considered a distribution in complete liquidation.

If such transfer of all the property does not occur within the taxable year the Commissioner may require of the taxpayer such bond, or waiver of the statute of limitations on assessment and collection, or both, as he may deem necessary to insure, if the transfer of the property is not completed within such three-year period, or if the taxpayer does not continue qualified under subparagraph (A) until the completion of such transfer, the assessment and collection of all income. war-profits, and excess-profits taxes then imposed by law for such taxable year or subsequent taxable years, to the extent attributable to property so received. A distribution otherwise constituting a distribution in complete liquidation within the meaning of this paragraph shall not be considered as not constituting such a distribution merely because it does not constitute a distribution or liquidation within the meaning of the corporate law under which the distribution is made ; and for the purposes of this paragraph a transfer of property of such other corporation to the taxpayer shall not be considered as not constituting a distribution (or one of a series of distributions) in complete cancellation or redemption of all the stock of such other corporation, merely because the carrying out of the plan involves (i) the transfer under the plan to the taxpayer by such other corporation of property, not attributable to shares owned by the taxpayer, upon an exchange described in paragraph (4) of this subsection, and (ii) the complete cancellation or redemption under the plan, as a result of exchanges described in paragraph (3) of this subsection, of the shares not owned by the taxpayer.

The legislative history of section 112 (b) (6) is both pertinent and interesting. It is well stated in *Tri-Lakes Steamship Co.* v. *Commissioner*, 146 Fed. (2d) 970, 972, 973, as follows:

\* \* \* Prior to the Revenue Act of 1935 there was no provision permitting the liquidation of a wholly owned subsidiary without recognition of gain or loss. 1 Mertens, Law of Federal Income Taxation, 559. Such a provision was, however, included in the Revenue Act of 1935. As originally proposed by a Senate amendment to H. R. 8974, the language of the section became as follows:

"(6) No gain or loss shall be recognized upon the receipt by a corporation of property or money distributed in complete or partial liquidation of another corporation, if the corporation receiving such property owns at least 80 per centum of the voting stock of such other corporation."

This was, however, altered prior to passage, so that the first clause read:

"No gain or loss shall be recognized upon the receipt by a corporation of property (*other than money*) distributed in complete liquidation of another corporation." 26 U. S. C. A. Int. Rev. Acts, page 802.

However, in the Revenue Act of 1936 the Congress revised the language of § 112 (b) (6), 26 U. S. C. A. Int. Rev. Code, § 112 (b) (6), by omitting the parenthetical qualifying words "other than money," and such omission has been continued in this section in all the Revenue Acts to date, \* \* \*

\*     \*     \*     \*     \*     \*     \*

It is not without importance, moreover, that the Senate Committee on Finance, in discussing § 115 (h) of the Revenue Bill of 1938, expressed the view that §§ 112 (b) (6) and (7) permit the distribution of property (including money) in addition to stock or securities, without the recognition of gain to the distributee, so that proposed changes in § 115 (h) were in the interest of added clarity. Cumulative Bulletin 1939–1, part 2, page 792. \* \* \*

It should also be pointed out that section 110 of the Revenue Act of 1935, which provided for the nonrecognition of gain or loss upon "the receipt by a corporation of property (other than money) in complete liquidation of another corporation," carefully amended sections 112 (c) (1) and 112 (e) of the Revenue Act of 1934, so that the gain should be recognized in cases where money was received in liquidation "but in an amount not in excess of the sum of such money," and that section 112 (e), denying the recognition of losses where the property received included both property (received without recognition of loss or gain) and money, should apply to the newly added section 112 (b) (6). When the Revenue Act of 1936 was adopted, in which the parenthetical phrase "(other than money)" was omitted, sections 112 (c) (1) and 112 (e) were restored to the form in which they appeared in the Revenue Act of 1934 by omitting any reference to section 112 (b) (6); and a new subsection (15) was added to section 113. The effect of this (see section 113 (a) (6), Revenue Act of 1938, and section 113 (a) (6) of the Internal Revenue Code) was to make the basis of property received under section 112 (b) (6) determinable, not under the general basis provision applicable to transactions covered by the other subsections of 112 (b), but to its own specific subsection

of section 113 (a), which made no reference to any property or money which might be received under section 112 (b) (6) which might require the computation of any gain or loss.

Strangely enough, there is no significant material in the various committee reports as to the reasons which motivated Congress to make the several changes above referred to. The purpose of the original enactment of section 112 (b) (6) was to encourage the simplification of corporate structures through elimination of subsidiaries. "The purpose [of 1936 amendment] was further to facilitate simplification of corporate structures." 80 Cong. Rec. (1936) 9038, 10288, 10452; H. Rept. No. 3068, 74th Cong. 2d sess. (1936) 7–8. It may be speculated that difficulties in administration contributed to the decision to change the reading of section 112 (b) (6) as it appeared in the 1935 Act to the form it had in the 1936 Act, and now has in the Internal Revenue Code.[2]

The history of the judicial interpretation of section 112 (b) (6) is also of considerable interest. In 1942 the United States Board of Tax Appeals decided the case of *Stimson Mill Co.*, 46 B. T. A. 141, in which it held that section 112 (b) (6) of the Internal Revenue Act of 1938 had no application where money alone was distributed to a parent corporation upon the liquidation of a subsidiary, and, therefore, a loss sustained by the distributee corporation was to be recognized. This result was contrary to the interpretation placed upon this section by G. C. M. 19435, 1938–1 C. B., p. 176, and the opinion gave no consideration to the legislative history of section 112 (b) (6).

The basic reasoning of the opinion in that case is summed up in the following quotation:

* * * the no-gain-or-loss provision was intended to cover situations in which the corporate taxpayer received property and not money, so that realization would not occur until the property was converted into cash. In a liquidation of property requiring a further step by the distributee to bring about realization of money, no gain or loss was to be recognized as the subject of tax or

---

[2] Darrell, Corporate Liquidations and the Federal Income Tax, 89 U. Pa. L. Rev. 907, 927–28:

"The 1935 Act required the recognition of gain from a section 112 (b) (6) liquidation in an amount not in excess of the sum of money received by the parent, and provided for the nonrecognition of loss. As a practical and administrative matter, this requirement had disadvantages. Few subsidiaries are completely stripped of cash or its equivalent. At the time of liquidation, no matter how small the sum of money, calculations would have been required of the parent's basis, the value of the assets and the gain or loss, in order to determine the amount of gain to be recognized and the basis of the assets for future purposes. The burden of making these calculations, in many instances, would have far exceeded any benefit to the revenue. With the change in the law to provide that the parent should take over the assets at the subsidiary's tax basis, it was logical to provide for full nonrecognition of gain even though money was received, for the gain from the sale of the subsidiary's property would be the same whether the property were sold and converted into cash by the subsidiary prior to liquidation, or by the parent after the liquidation. In so doing, there was no need to go the full length of providing for nonrecognition where the assets of the subsidiary consists entirely of cash, for the transaction in such a case is essentially a closed one. But there is nothing in the language or history of the statute, though there may be in its underlying purpose, to justify a distinction."

deduction until the conversion into money. How else and when would such a clear gain as appears in the foregoing illustration be taxed? We can not agree, therefore, with the conclusion of G. C. M. 19,435, 17 C. B. (1), p. 176.

This case was affirmed on appeal, but on a totally different ground, the Circuit Court (Ninth Circuit) expressly saying that it was therefore unnecessary to consider whether the word "property" includes money. 137 Fed. (2d) 286. In 1943 and 1944 this tribunal, by memorandum opinions, decided three cases involving the same question on the authority of the *Stimson Mill Co.* case. One of these cases was not appealed.[3] Another was affirmed. *Commissioner* v. *Day & Zimmerman, Inc.*, 151 Fed. (2d) 517 (CCA-3, Sept. 25, 1945). The affirmance again was on a different ground, the court saying that it agreed with the decision of the Tax Court, "but for a reason different from the one assigned by that tribunal." The third was reversed. *Tri-Lakes Steamship Co.* v. *Commissioner*, *supra* (CCA-6, Jan. 22, 1945). In that case the Circuit Court made an exhaustive exposition of the legislative history of the section in question, from which we have already quoted. It also said:

* * * If a gain is not recognized where the distribution is in money, then he [Commissioner] says, it will never be taxed, because in the case of money the gain is realized at the moment of distribution. This argument, however, overlooks the fact that gain or loss is realized by the subsidiary when its assets have been converted into cash, and so is taxable to or deductible by the subsidiary upon realization. In the present case, gain was realized by the subsidiary, included in its return, and the tax thereon paid. It is not to be inferred, in the fact of the language of the section, that the Congress intended to tax the liquidated corporation, and likewise its distributee, on gains derived from the same transaction. It is true, of course, that hypothetical cases may be suggested wherein what is apparently a gain to the subsidiary is really a loss to the parent, or where a loss to the subsidiary is a gain to the parent. Undoubtedly, in the difficult task of framing a taxing statute, with its necessarily complicated provisions, designed to prevent tax avoidance on the one hand and unfairness on the other, the impact of a tax will not always fall with equal fairness upon all taxpayers. We are not, however, concerned with the wisdom of a tax law, but only with its meaning, express or clearly implied. The term "property" in § 112 (b) (6) of the 1936 Act includes money, and its distribution in liquidation is a tax free transaction. * * *

Since the opinion by the Circuit Court of Appeals for the Sixth Circuit was handed down in the last cited case, we have not dealt explicitly with this question and have not referred to the *Stimson Mill Co.* case. However, in *Robert Gage Coal Co.*, 2 T. C. 488, and *Burnside Veneer Co.*, 8 T. C. 442, we necessarily assumed as a premise to the conclusion reached therein, that "property," as used in section 112 (b) (6) of the Internal Revenue Code, included money, since the distributions made by corporations upon liquidation were cash distributions, and we held that no loss sustained by the stockholders

---

[3] *American Zinc, Lead & Smelting Co.,* Docket No. 109991, May 26, 1943.

resulting from such distributions in liquidation could be recognized. *Robert Gage Coal Co.* was not appealed. Upon the appeal of *Burnside Veneer Co.*, this decision was affirmed (CCA–6, Apr. 7, 1948), 167 Fed. (2d) 214, and the court specifically stated: "The cash distribution to the stockholders constituted property within section 112 (b) (6). *Tri-Lakes Steamship Co.* v. *Commissioner*, 146 Fed. (2d) 970."

While the *Stimson Mill Co.* case is not without persuasiveness upon a question of whether, in the legislative wisdom, "property" *should* include money where the word "property" is used in the nonrecognition provisions of section 112 of the code, we can not escape the conclusion, after a careful consideration of the legislative history of section 112 (b) (6) and the several opinions of the Circuit Courts upon this question, that Congress intended the word "property," as used in this section, to include money. While this conclusion was implicit in the *Robert Gage Coal Co.* and *Burnside Veneer Co.* cases, we think it advisable, for the sake of clarity and consistency, to state our conclusion explicitly. The *Stimson Mill Co.* case will no longer be followed upon this issue.

Petitioner next urges that section 112 (b) (6) can not apply where there is no intention on the part of the distributee to continue the business of the liquidated subsidiary. This position is founded upon language appearing in *Fairfield Steamship Corporation* v. *Commissioner* (CCA–2), 157 Fed. (2d) 321. That case is clearly distinguishable, since it was the intention there that both the subsidiary and the parent be liquidated, bringing into play a situation not unlike that interdicted by *Gregory* v. *Helvering*, 293 U. S. 465. Petitioner has cited no authority that compels the continuation of the precise business of the liquidated subsidiary by the parent.

Petitioner's final argument is that section 112 (b) (6) can not apply because it has not met the requirements of subsection (C) requiring the transfer of all the property within the taxable year. Whatever may be the merits of respondent's contrary view, based upon *Commissioner* v. *Winthrop* (CCA–2), 98 Fed. (2d) 74, affirming 36 B. T. A. 314, we recognize that subsection (C) is the alternative to (D), and if the requirements of subsection (D) are met, it is unnecessary that those of (C) be met. On the basis of the record before us we conclude, as was done in the *Burnside* case, that the requirements of (D) have been met. Basically, (D) provides for two elements: (1) A plan of liquidation; and (2) transfer of all the property under the liquidation to be completed within three years of the taxable year during which the first liquidating distribution is made. There is no need for any formal plan of liquidation if one can be discovered from the circumstances surrounding the liquidation. *John R. Roach*, 4 T. C. 1255; *Burnside Veneer Co., supra.*

As to the three-year requirement, that statutory mandate seems also to be satisfied. "The statute does not require a formal statement to this effect; but it was present here by necessary implication, in the various resolutions of the directors and stockholders." *Burnside Veneer Co.* v. *Commissioner, supra.* All of the evidence here points to the fact that immediate liquidation was to be undertaken and it was to be concluded, as it actually was, within a space of a few months. Under the pertinent Pennsylvania statutes (15 Purdon's Penna. Stats. Ann., § 2852–1002–1104), it appears that speedy liquidation is sought. For example, in 1104 B the following appears: "* * * the board of directors shall *immediately* cause notice of the winding up proceedings to be mailed * * *." (Emphasis supplied.) In subsection C it is stated: "The board of directors shall, *as speedily as possible*, proceed to collect all sums due or owing to the corporation * * *," and so on. (Emphasis supplied.)

Any attempt by petitioner to urge its failure to comply with the regulations must be answered "that it cannot obtain a tax advantage by its own failure to observe the law." *Burnside Veneer Co.* v. *Commissioner, supra.*

Upon the issue presented, we decide in favor of respondent.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

MURDOCK, *J.*, dissenting: The interpretation of "property" to include money would allow a tax avoidance where the cash would exceed the cost of the stock. I can not imagine why Congress would want or intend that to occur, although it might have reason not to recognize a loss after operating losses had been deducted on consolidated returns.