OPINION. Raum, Judge: Petitioner urges that the liquidation of Grand Rapids, whereby it received assets having a fair market value of $764,069.48 in exchange for stock which it had purchased for $617,347.50, was tax free under section 112 (b) (6) of the Internal Revenue Code.[2] The consequence of petitioner’s contention is that realized gain in the amount of $146,721.98 would forever escape taxation. Petitioner recognizes that such result may be “startling,” but argues that it follows strictly from the unambiguous language of the statute. Section 112 (b) (6) does provide, under specified conditions, for the nonrecognition of gain or loss on the liquidation of a subsidiary, and complementary provisions in section 113 (a) (15)[3] require that the property received in liquidation shall” have the same basis that it had in the hands of the subsidiary. Thus, upon a liquidation governed by section 112 (b) (6), the cost of the parent’s stock in the subsidiary thereafter becomes an immaterial consideration and plays no part in the computation of the parent’s income at any future time; only the basis of the assets in the hands of the subsidiary has any significance. Moreover, even where the assets received from the subsidiary consist of cash, so that there is no basis to carry over for the computation of subsequent gain or loss, section 112 (b) (6) has been held applicable, thereby permanently depriving the parent of the advantage of any realized loss or relieving it forever of tax on realized gain. International Investment Corporation, 11 T. C. 678, affirmed 175 F. 2d 772 (C. A. 3); Tri-Lakes Steamship Co. v. Commissioner, 146 F. 2d 970 (C. A. 6). The legislative purpose in calling for such result is not readily apparent. Cf. International Investment Corporation, supra, at 683. And it may well be doubted whether Congress would have enacted section 112 (b) (6) without appropriate safeguards if the full implications of these provisions, as a potential tax-avoidance device, had been effectively called to its attention. However, these provisions are part of the law and we must apply them as we find them. If they are otherwise applicable here, petitioner’s position must be sustained, and it cannot be charged tax-wise with the gain which it realized on the liquidation of Grand Rapids.[4] Respondent argues that section 112 (b) (6) is inapplicable, since, in his view, the liquidation. of Grand Rapids was merely one step in a single, integrated transaction, which cannot be broken up into its component parts. According to respondent, the intention to liquidate Grand Rapids existed at the very beginning; and the entire transaction, as originally planned, was to consist merely of the purchase of Grand Rapids stock at an advantageous price, to be followed by the disposition of operating assets to Grand Stores (in exchange primarily for debentures and assumption of liabilities), whereupon Grand Rapids was to be dissolved, leaving petitioner with assets substantially in excess of its original investment. This, says the Government, was the substance of the transaction, and it invokes the familiar rule that where a series of integrated steps are carried out in accordance with a preconceived plan, the tax consequences' are determined by the substance of the transaction as a whole, and not by applying the statutory provisions to the separate steps. Commissioner v. Ashland Oil & R. Co., 99 F. 2d 588 (C. A. 6); Kimbell-Diamond Milling Co., 14 T. C. 74, affirmed 187 F. 2d 718 (C. A. 5), certiorari denied 324 U. S. 827; Ruth M. Cullen, 14 T. C. 368; Koppers Coal Co., 6 T. C. 1209. If the Government is correct as to its underlying contention that the liquidation of Grand Rapids was part of the original plan, there would be much force to its position. 'For, it is firmly established that a transaction carried out in accordance with a preconceived plan may not be split into its component parts, and that the substance rather than the form of the transaction is decisive. This principle has been applied in a wide variety of cases. E. g., Minnesota Tea Co. v. Helvering, 302 U. S. 609, 613; Helvering v. Alabama Asphaltic Limestone Co., 315 U. S. 179, 184-185; Helvering v. Elkhorn Coal Co., 95 F. 2d 732 (C. A. 4), certiorari denied 305 U. S. 605; Electrical Securities Corp. v. Commissioner, 92 F. 2d 593 (C. A. 2); Starr v. Commissioner, 82 F. 2d 964 (C. A. 4), certiorari denied 298 U. S. 680; McInerney v. Commissioner, 82 F. 2d 665, 668 (C. A. 6); Hazeltine Corporation v. Commissioner, 89 F. 2d 513 (C. A. 3); Commissioner v. Schumacher Wall Bd. Corp., 93 F. 2d 79 (C. A. 9); West Texas Refining & D. Co. v. Commissioner, 68 F. 2d 77, 79-80 (C. A. 10). The difficulty with the Government’s position is its factual contention here that “there was an intent and plan of liquidation of the Grand Rapids corporation by the petitioner, from the beginning * * We cannot find, on this record, that the liquidation of Grand Rapids was part of the plan as originally formulated, when on April 26 or 27, the contractual arrangements for the transaction were orally made. Although the matter is not completely free from dudbt, we are satisfied that the determination to liquidate Grand Rapids was independently made at a subsequent time and that it was not an integral part of the transaction. It is quite true that the sale of the Grand Rapids operating assets in exchange for debentures of the new corporation was part of the original plan. And we do not give much weight to petitioner’s contention that there was always the possibility that the Eldred group might not go through with the deal after petitioner had purchased the Grand Rapids stock — for, the point in this connection is that petitioner expected the transaction to be consummated as planned and it proceeded on that basis. It is difficult to see how the possibility that a contractual obligation would not be met is any more fatal to the applicability of the single transaction rule than the absence of a unifying contract itself, provided that there was in fact a unified plan. Cf. Helvering v. Elkhorn Coal Co., supra; Portland Oil Co. v. Commissioner, 109 F. 2d 479, 489 (C. A. 1); Von's Investment Co., Ltd. v. Commissioner, 92 F. 2d 861 (C. A. 9); Royal Marcher, 32 B. T. A. 76, 80. Accordingly, in this respect, we must accept respondent’s position that there was a preconceived plan to buy stock in Grand Rapids and to cause Grand Rapids to dispose of its operating assets for debentures of the new corporation. Moreover, it was also contemplated from the beginning that within the corporate empire dominated by E. G. Davies, as augmented by Grand Rapids, a 100 per cent net profit would ultimately be realized, since the net cost of the $350,000 debentures to Davies-controlled corporations *was expected to be about $175,000. But that is a far cry from saying that the plan contemplated the acquisition of the debentures by petitioner, utilizing Grand Rapids only as a conduit for that purpose. If such were the case and if the liquidation of Grand Rapids had been an integral part-of the plan, we think respondent would be entitled to prevail in his contention that section 112 (b) (6) is inapplicable. Cf. Kimbell-Diamond Milling Co., supra; Commissioner v. Ashland Oil & R. Co., supra. However, so far as is disclosed by the evidence before us, there was no plan to liquidate Grand Rapids when petitioner, on April 26 or 27, 1945, entered into contractual arrangements to purchase the Grand Rapids stock. It must be remembered that Kahn had died on April 24 and the option held by the Eldred group was to expire on April 30. Time was therefore of the essence. The discussions and arrangements entered into at the hastily arranged meeting of April 26 or 27 appear to have been entirely on a trading and business level, without particular attention to tax considerations. To be sure, at some undisclosed time shortly thereafter, the thought occurred to Carlson that it would be advantageous to liquidate Grand Rapids once the transaction were completed, and it appears to have been assumed subsequently that such would be done. But the decision to liquidate Grand Rapids was one independently arrived at after the basic transaction had been formulated. Conceivably, Grand Rapids could have been kept alive indefinitely, notwithstanding that Davies had not planned any business activities for it. Section 112 (b) (6) is literally applicable here, assuming that its various other conditions have been satisfied; accordingly, unless the substance of the transaction is different from what appears, petitioner must prevail on this issue. Respondent does urge that the substance is different; he contends that the transaction from the very outset contemplated the acquisition of the debentures by petitioner, the liquidation of Grand Rapids being merely an intermediate step towards achieving that goal. We do not so conclude on the record before us, and therefore cannot hold that section 112 (b) (6) is inapplicable, if its conditions are otherwise met. Respondent contends, in the alternative, that the conditions of section 112 (b) (6) have not been satisfied because petitioner was not, on the date of the adoption of the plan to liquidate Grand Rapids, the owner of at least 80 per cent of its stock. But, in accordance with our findings, petitioner’s ownership of the Grand Rapids stock reached 80 per cent by May 12,1945. We do not know exactly when Carlson concluded that the liquidation of Grand Rapids would be desirable or when he communicated his conclusion to Davies or any other authorized representative of petitioner. It seems likely that the liquidation of Grand Rapids had been contemplated for some time prior to August 1, 1945, and it is true that the “adoption of the plan of liquidation” need not be evidenced by formal action of the corporation or the stockholders. Cf. International Investment Corporation, 11 T. C. at 685. However, even an informal adoption of the plan to liquidate presupposes some kind of definitive determination to achieve dissolution, and, on the evidence before us, that determination was made on August 1, 1945. Accordingly, we must conclude that section 112 (b) (6) has been satisfied in tins respect. A subsidiary issue presented for our consideration is whether the $7,023 which the petitioner received in compromise of its claim to the dividend declared by Grand Rapids on May 2,1945, was realized in 1945 or 1946. Petitioner was on the accrual basis of accounting and the proper time for accrual of that amount was the time at which the dispute was resolved and the money became due petitioner. Cf. Foster Wheeler Corporation, 20 T. C. 15; Cold Metal Process Co., 17 T. C. 916, 932, affirmed C. A. 6, November 21, 1952. Boston Elevated Railway Co., 16 T. C. 1084, 1105, affirmed on another issue, 196 F. 2d 923 (C. A. 1). The facts show that the stipulation of compromise was filed with the California court on March 2, 1946. Although the facts before us in this connection are meager, we think that the dispute was settled in 1946 and therefore hold that the $7,023 should have been included in petitioner’s return for 1946, rather than for 1945. The final issue presented is whether interest on the Grand Stores debentures was properly included in petitioner’s income from September 1945 through January 1946. The issue turns on the question of when the ownership of the debentures passed from Grand Eapids to petitioner. The petitioner asserts that the ownership did not pass until F. E. Davies, on behalf of petitioner, accepted the permanent debentures from Goff in February 1946. However, the permanent debentures were issued merely in substitution for the temporary debentures, and respondent relies, in part, on the fact that when the temporary debenture was surrendered an assignment in blank appeared on the back thereof. No witness was able to recall when that assignment was executed. Such assignment could have transferred ownership to petitioner at a considerably earlier time than February 1946. The burden of proof in this respect was on petitioner, and we think it has not been met. Moreover, we have found as a fact that all of the assets of Grand Eapids were either received, or taken over by petitioner prior to December 31, 1945, or were subject to its unqualified control. Petitioner has not shown any error in respect of this issue. Decision will be entered wider Bule 50. SEC. 112. RECOGNITION OF GAIN OR LOSS. (b) Exchanges Solely in Kind.— * * * * * * * (6) Property received by corporation on complete liquidation op another.— No gain or loss stall be recognized upon the receipt by a corporation of property distributed In complete liquidation of another corporation. For the purposes of this paragraph a distribution shall be considered to be in complete liquidation only if — I (A) the corporation receiving such property was, on the date of the adoption of the plan of liquidation, and has continued to be at all times until the receipt of the property, the owner of stock (in such other corporation) possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and the owner of at least 80 per centum of the total number of shares of all other classes of stock (except non-voting stock which is limited and preferred as to dividends), and was at no time on or after the date of the adoption of the plan of liquidation and until the receipt of the property the owner of a greater percentage of any class of stock than the percentage of such class owned at the time of the receipt of the property; and (B) no distribution under the liquidation was made before the first day of the first taxable year of the corporation beginning after December 31, 1935'; and either (C) the distribution is by such other corporation in complete cancellation or redemption of all its stock, and the transfer of all the property occurs within the taxable year; in such case the adoption by the shareholders of the resolution under which is authorized the distribution of all the assets of such corporation in complete cancellation or redemption of all its stock, shall be considered an adoption of a plan of liquidation, even though no time for the completion of the transfer of the property is specified in such resolution ; or (D) such distribution is one of a series of distributions by such other corporation in complete cancellation or redemption of all its stock in accordance with a plan of liquidation under which the transfer of all the property under the liquidation is to be completed within three years from the close of the taxable year during which is made the first of the series of distributions under the plan, except that • « • Internal Revenue Code : SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS. (a) Basis (Unadjusted) of Property. — Tie basis of property sball be the cost of such property ; except that— * * * * * * * (15) Peopeetx received by a corporation on complete liquidation of another.— If the property was received by a corporation upon a distribution in complete liquidation of another corporation within the meaning of section 112 (b) (6), then the basis shall be the same as it would be in the hands of the transferor. The basis of property with respect to which election has been made in pursuance of the last sentence of section 113 (a) (15) of the Revenue Act of 1936, as amended, shall, in the hands of the corporation making such election, be the basis prescribed in the Revenue Act of 1934, as amended. Petitioner concedes, however, that it realized gain in 1946 on the redemption of the debentures for $367,500, such gain being equal to the excess of that amount over the basis of the debentures, which it fixes at $322,000, their fair market value at the time of their issuance and the liquidation of Grand Rapids. The theory justifying the use of such fair market value as basis is apparently the assumption that assets of Grand Rapids which constituted the consideration for the debentures had a fair market value of the same amount. In any event, respondent does not appear to contest the position that the debentures had a basis of $322,000 in the hands of Grand Rapids and that such basis remained unchanged in the hands of petitioner pursuant to section 113 (a) (15) if petitioner’s position is otherwise correct. However, there is a dispute between the parties as to whether the conceded $45,500 gain was ordinary income or capital gain. The debentures were certainly not held for sale to customers, cf. Estate of Clarence E. Lehr, 18 T. C. 373, 379, nor do we think that they were “stock in trade’’ within the meaning of section 117 (a) Cl) (A) of the Code. Although petitioner was in a general way in the financing business and although its participation in the transaction as a whole may generally be described as providing financial assistance to the Eldred group, we think that in the circumstances gf this case the debentures cannot fairly be regarded as its “stock in trade',”