BURNSIDE VENEER COMPANY, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3420. Promulgated February 28, 1947.

*Harold W. Walker, Esq.,* and *C. Chester Guy, Esq.,* for the petitioner.

*Cecil H. Haas, Esq.,* for the respondent.

OPINION.

HARLAN, *Judge*: Respondent denies the allowance of a long term capital loss in this case because:

(1) Petitioner, at all times from the beginning to the end of the liquidation proceedings, owned more than 80 per cent of all the shares of capital stock in the Glanton Veneer Co.; the amount of said holdings did not change during the liquidation; no distribution in liquidation was made before the first taxable year of the Glanton corporation beginning after December 31, 1935; and the liquidation of said corporation was in accordance with a plan of liquidation under which the transfer of all the property under liquidation was completed within three years from the close of the taxable year during which the first of the series of distributions was made, and

(2) Whatever loss the petitioner sustained occurred in a taxable year prior to the fiscal year of 1941,

The basis of the first reason relied upon by respondent is section 112 (b) (6) of the Internal Revenue Code,[1] covering the recognition

---

[1] Sec. 112 (b) (6). PROPERTY RECEIVED BY CORPORATION ON COMPLETE LIQUIDATION OF ANOTHER.—No gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation. For the purposes of this paragraph a distribution shall be considered to be in complete liquidation only if—

(A) the corporation receiving such property was, on the date of the adoption of the plan of liquidation, and has continued to be at all times until the receipt of the property, the owner of stock (in such other corporation) possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and the owner of at least 80 per centum of the total number of shares of all other classes of stock (except nonvoting stock which is limited and preferred as to dividends), and was at no time on or after the date of the adoption of the plan of liquidation and until the receipt of the property the owner of a greater percentage of any class of stock than the percentage of such class owned at the time of the receipt of the property; and

(B) no distribution under the liquidation was made before the first day of the first taxable year of the corporation beginning after December 31, 1935; and either

* * * * * * *

(D) such distribution is one of a series of distributions by such other corporation in complete cancellation or redemption of all its stock in accordance with a plan of liquidation under which the transfer of all the property under the liquidation is to be completed within three years from the close of the taxable year during which is made the first of the series of distributions under the plan, except that if such transfer is not completed within such period, or if the taxpayer does not continue qualified under subparagraph (A) until the completion of such transfer, no distribution under the plan shall be considered a distribution in complete liquidation.

of gain or loss upon liquidation of a subsidiary corporation. The parties agree that petitioner held over 80 per cent of the stock of the Glanton Veneer Co. from the initiation of liquidation until its conclusion and that the amount of this stockholding was not changed during the period involved. They also agree that no distribution occurred before the first day of the first taxable year of the corporation beginning after December 31, 1935, and that all disbursements by Glanton were made within Glanton's three fiscal years 1938, 1939, and 1940.

Petitioner, however, contends that there was no "plan of liquidation" and that therefore it does not come under that provision of the revenue law which exempts liquidation distributions from resulting in either taxable gain or loss to the distributee.

The single question presented for decision by respondent's first objection to the allowance of a long term capital loss herein is: Was there a "plan of liquidation" within the contemplation of section 112 (b) (6)?

Mertens Law of Federal Income Taxation, vol. 1, ¶ 9.92, contains the following:

The 1936 and later acts expressly refer to a "plan of liquidation" in two connections, (1) in the case of a complete liquidation entitled to the benefits of the capital gain provisions, and (2) in the case of the tax free liquidation of a subsidiary corporation. * * * It would seem, on the other hand, that the absence of a formal written plan should not be fatal if there exists in fact a purpose to liquidate which is accomplished. Whether a corporation is in liquidation is a question of fact. It is not a technical situation which can be assumed or discarded at will merely by affirmative action, the normal and necessary result of which is the winding up of the corporation's business. Accordingly, the adoption or failure to adopt a resolution of dissolution or liquidation should not be controlling or determinative.

* * * The courts have, in general, adopted a liberal attitude in determining the existence of a plan of liquidation in the cases coming before them and have held generally that there need not be a formal plan of liquidation.

Due to the lack of prior decisions interpreting the term "plan of liquidation" as used in section 112 of the code, for relevant precedents on this definition we must examine decisions interpreting the phrase "bona fide plan of liquidation" as used in section 115 (c) of the code as it existed after 1928 and prior to the amendment in the revenue act of 1942. This latter section referred to gain or loss to a taxpayer stockholder from the liquidation of corporations generally, while section 112 (b) (6) was limited to gain or loss to a controlling corporation resulting from the liquidation of a subsidiary corporation. However, it is obvious from the intent and wording of both sections that no greater formality could be judicially required to establish the existence of a "plan of liquidation" under section 112 (b) than would

be required to establish the existence of a "bona fide plan of liquidation" under section 115 (c).

In *John R. Roach* (1945), 4 T. C. 1255, the interpretation of a bona fide plan of liquidation under section 115 (c) was before the Tax Court in a case in which the resolution of the directors and their conduct during the liquidation was certainly no more formal than in the case at bar. Therein the Court said:

The formal resolutions herein do not set forth with completeness the plan for liquidating the corporate assets and there may appear to be some question as to whether the resolutions provide unequivocally for immediate liquidation. However, the testimony and the subsequent acts of the directors and stockholders dispel any such doubts, and clearly show that the plan, in fact, required that the liquidation be carried out immediately. In *John Milton*, 33 B. T. A. 4, it was held that liquidation is a question of fact, and in *W. F. Kennemer*, 35 B. T. A. 415; affd., 96 Fed. (2d) 177, it was said that the adoption or failure to adopt a resolution of dissolution or liquidation is not determinative. A complete liquidation within the meaning of the Revenue Act of 1936 was found by a District Court of Pennsylvania in *McCune* v. *Driscoll*, decided February 16, 1940, where there appears to have been no completely formalized plan, but such a plan of complete liquidation was found by the court from the resolutions and the surrounding circumstances and acts in connection with the liquidation.

The above case has been expressly followed in at least two memorandum opinions by this Court and has been acquiesced in by the Commissioner. From the cited case, it appears that the testimony at the hearing concerning the liquidation and the circumstances surrounding the liquidation are relevant to be considered by the Court in determining whether or not there was a plan of liquidation.

In the instant case S. J. Glanton testified concerning the intentions, knowledge, and activities of the board of directors as set forth in the findings of fact herein. Furthermore, the resolution of the board of directors calling for a liquidation states that the liquidation shall proceed under section 1182 of the North Carolina Code of 1935. This section sets out in detail the procedure necessary to institute liquidation. Under that section the stockholders are authorized to either approve the liquidation at a called meeting or by unanimous consent to approve the liquidation in writing. In this case the stockholders unanimously approved the liquidation in writing and directed that this be done "as provided by the laws of the State of North Carolina." Section 1194 of the North Carolina Code of 1935 then in force designates the directors of a corporation in liquidation for any reason to act as trustees and this section furnishes a very complete outline of their powers and liabilities as such, as well as directives as to just how the liquidation shall proceed. When we take into consideration the statutory regulations of North Carolina, which were expressly incorporated by the directors and stockholders, and in addition thereto we consider the

testimony of S. J. Glanton at the hearing, which sets forth the steps taken by the directors, it is difficult for this Court to conjure any desirable provision of a plan that was not provided for either by the directors or by the law under which they acted.

In *Horn & Hardart Baking Co.* v. *United States*, 34 Fed. Supp. 89, the court said:

* * * Liquidation cannot be brought about by a mere declaration and the question of whether a corporation is in liquidation is one of fact to be determined by the evidence of the corporation's activities. It is not a technical status which can be assumed or discarded at will by the adoption of a resolution, but it is an existing condition which is brought about by affirmative action, the normal and necessary result of which is the winding up of the corporation business. *W. E. Guild* v. *Commissioner*, 19 B. T. A. 1186. The adoption or failure to adopt a resolution of dissolution or liquidation is not controlling or determinative.

The evidence presented convinces us that the requirements of subparagraph (D) of section 112 (b) (6) were met and that the series of distributions received by petitioner from the Glanton Veneer Co. were "in accordance with a plan of liquidation." Petitioner insists, however, that the claimed loss should be allowed because Glanton and petitioner did not meet the requirements of the respondent's regulations pertaining to "Liquidations covering more than one taxable year," and "Records to be kept and information to be filed with return." These regulations were promulgated pursuant to the provision in the last paragraph of section 112 (b) (6) that, if the transfer of all the property does not occur within the taxable year, the Commissioner *may require* that certain things be done by the taxpayer in order to insure the assessment and collection of the revenue. This provision was never intended to permit a parent corporation which sustained a loss in connection with a series of distributions received in complete liquidation of a subsidiary, to fail to comply with the regulations and set up such failure in order to claim such a loss as a deduction. Obviously, in such an instance, regulations promulgated to insure collection of revenue have no application and can be waived.

It is our holding in this case that the regulations of the Commissioner are not controlling and that the law in the *Roach* and *Hardart Baking Co.* cases clearly declares that in the case at bar there was a plan of liquidation within the purview of the terms of section 112 (b) (6) of the code.

Respondent's second contention in this case, that petitioner's loss is not allowable because it was ascertainable by the petitioner and was known to petitioner within a close degree of exactness in the fiscal year 1940, is not being decided by us, owing to the fact that we have rendered decision for the respondent on the first argument.

Reviewed by the Court.

*Decision will be entered for the respondent.*

450

BLACK J., dissenting: In my judgment the majority opinion decides the only issue presented in this proceeding incorrectly. The issue is a narrow one.

It seems perfectly clear from the findings of fact that petitioner suffered a long term capital loss in the taxable year of $24,140.35 and is entitled to have that loss allowed as a deduction unless it is prevented from doing so by the exceptions contained in section 112 (b) (6) of the code. It is unnecessary to set out in this dissent the entire provisions of section 112 (b) (6). It seems to be plain that the decision of the only issue involved in this proceeding depends upon whether the liquidation of the Glanton Veneer Co., the subsidiary corporation, was in accordance with a plan as described in section 112 (b) (6) (D), printed in the margin.[1] The plan under which the dissolution and liquidation of the subsidiary, Glanton, proceeded was evidenced by a corporate resolution adopted by the directors of Glanton September 23, 1937, which reads as follows:

At a special meeting of the Board of Directors of the Glanton Veneer Company, Inc., called for that purpose, two-thirds majority directors being present, said meeting being held in the office of the company at Whiteville, N. C., it is unanimously agreed that the said corporation be immediately dissolved as provided by law under section #1182, N. C. Code of 1935, and the officers of said corporation are directed to forthwith secure the unanimous consent of the stockholders and to take all necessary and proper steps to legally effect the said dissolution forthwith.

The stockholders filed their consent to this dissolution. On December 28, 1937, the Secretary of State of North Carolina issued a final certificate of dissolution of Glanton. Thereupon the liquidation of Glanton proceeded until it was completed January 11, 1941. On that date the last distribution to stockholders was made. It consisted of $6,597.05, of which petitioner received $5,334.65. The question is, did this conceded liquidation take place under "a plan of liquidation under which the transfer of all the property under the liquidation is to be completed within *three* years from the close of the taxable year during which is made the first of the series of distributions under the plan," within the meaning of section 112 (b) (6) (D) of the statute? In my opinion the facts as found by the majority show clearly that there was no such "plan" as to bring the liquidation within the statute. Plainly, Glanton was making no attempt to liquidate under that section of the statute. The Commissioner in his brief says: "Sec-

[1] **(D)** such distribution is one of a series of distributions by such other corporation in complete cancellation or redemption of all its stock in accordance with a plan of liquidation under which the transfer of all the property under the liquidation is to be completed within three years from the close of the taxable year during which is made the first of the series of distributions under the plan, except that if such transfer is not completed within such period, or if the taxpayer does not continue qualified under subparagraph (A) until the completion of such transfer, no distribution under the plan shall be considered a distribution in complete liquidation.

tion 112 (b) (6) does not define a 'plan of liquidation' or state how it shall be adopted, and no decided case ruling on those points under said section has been found." It is true that section 112 (b) (6) does not define "plan of liquidation," but the Commissioner seems to forget that his own Treasury Regulations have a good deal to say on that subject, as one would naturally and properly expect. These regulations are quite comprehensive and are found in Treasury Regulations 103, sections 19.112 (b) (6)–1, –2, –3, –4, and –5. It would serve no useful purpose in this dissent to quote these regulations at length, because the most of them are not immediately involved. However, section 19.112 (b) (6)–3, dealing with "Liquidations covering more than one taxable year," is precisely in point in dealing with the only issue which we have here to decide. That regulation reads in part as follows:

(a) In order for the distribution in liquidation to be brought within the exception provided in section 112 (b) (6) to the general rule for computing gain or loss with respect to amounts received in liquidation of a corporation, the entire property of the corporation shall be transferred in accordance *with a plan of liquidation, which plan shall include a statement showing the period within which the transfer of the property of the liquidating corporation to the recipient corporation is to be completed.* The transfer of all the property under the liquidation must be completed within three years from the close of the taxable year during which is made the first of the series of distributions under the plan. [Emphasis supplied.]

So far as I can see, the above quoted regulation is a perfectly valid one and was framed for the purpose of properly effecting the enforcement of a statute which Congress enacted for a very definite and special purpose. It will be noted that the regulation requires that, before the nonrecognition of gain or loss applies, there must be a plan and this plan must "include a statement showing the period within which the transfer of the property of the liquidating corporation to the recipient corporation is to be completed." There is nothing ambiguous about that. Plainly, the plan to which these regulations refer must be a written plan, or else what would be the sense in saying it must "include a statement showing the period within which the transfer of the property of the liquidating corporation to the recipient corporation is to be completed"? As I have already pointed out, the plan under which Glanton was liquidated was the resolution adopted by its board of directors September 23, 1937, and ratified by its stockholders. This plan contains no statement whatever showing the period within which the transfer from Glanton to its stockholders, including petitioner, was to take place, as definitely required by the regulation to which reference is above made.

But the Commissioner seems to argue that, when a taxpaper invokes a regulation which seems to be very much in point, the Commissioner

can "waive" him out by "waiving" his own regulations. And, to my amazement, the majority opinion seems to approve such a view, as will be seen from the latter part of the majority opinion. Treasury regulations are promulgated for the guidance of taxpayers, as well as for the guidance of the Commissioner, and they can not be "turned on and off" as suits the Commissioner. It is perfectly true, of course, that there are instances where the failure of a taxpayer to comply with certain regulations can not be invoked to his own advantage in a tax case, but we have no such situation here, and it seems to me a very erroneous conception to speak of the Commissioner's right to "waive" his own regulations, as the majority opinion does.

As I have already said, it seems to me perfectly plain that the facts show that Glanton was making no effort to liquidate in accordance with section 112 (b) (6) and had no such purpose in view. If petitioner had received, let us say, $75,000 as a result of the liquidation, it would have undoubtedly, under the Treasury regulations, been taxable on the gain which would have resulted by subtracting from that amount its conceded cost basis of $65,500. By the same token, having received only $41,359.65, it seems to me it is entitled to take its loss as the statute provides.

The cases which the majority opinion cites in support of its interpretation of "plan of liquidation" as used in section 112 (b) (6) are cases which deal with "bona fide plan of liquidation" under section 115 (c) and are not, in my judgment, at all in point.

In *George G. Mason*, 3 T. C. 1087, we pointed out the difference between liquidation under the general provisions of the statute contained in section 115 (c) and the special provisions contained in section 112 (b) (6), and in doing so, among other things, we said:

\* \* \* This material difference between the two sections of the same act, in both 1936 and 1938, one dealing in general with the liquidation of corporations and the other dealing with the liquidation of subsidiary corporations, indicates that Congress deliberately avoided in drafting section 115 (c) the *inflexible time* requirement appearing in the proviso which it added to section 112 (b) (6) (D), and that in section 115 (c) the legislative emphasis was placed upon the good faith of the plan to complete the liquidating transfers within three years, rather than on the actual completion of the transfers within the specific time limit. \* \* \*

Therefore, in my opinion, it is a mistake to confuse liquidation under section 115 (c) with liquidation under section 112 (b) (6), and in my judgment the majority opinion makes that mistake.

I respectfully dissent.

DISNEY, *J.*, agrees with this dissent.