BURNSIDE VENEER CO., Inc. v. COMMISSIONER OF INTERNAL REVENUE.

No. 10500.

Circuit Court of Appeals, Sixth Circuit.

April 7, 1948.

---

Elden McFarland, of Washington, D. C. (Ike Lanier and Harold Walker, both of Cincinnati, Ohio, and Elden McFarland and C. Chester Guy, both of Washington, D. C., on the brief), for petitioner.

Helen Goodner of Washington, D. C. (Theron Lamar Caudle, George A. Stinson, and Carlton Fox, all of Washington, D. C., on the brief), for respondent.

Before SIMONS, ALLEN, and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

This is a petition to review a decision of the Tax Court of the United States which sustained the Commissioner's disallowance of a deduction claimed by petitioner, a Kentucky corporation. In its return for the fiscal year ending November 30, 1941, petitioner deducted $24,140.35 as a long-term capital loss, being the difference between the cost of 655 shares of capital stock of Glanton Veneer Company, a North Carolina corporation (hereinafter called Glanton), acquired at an aggregate cost of $65,500, and the aggregate amount of cash received by petitioner in the liquidation of Glanton, totaling $41,359.65. Petitioner, at all the times involved, was the owner of more than 80% of the outstanding capital stock of Glanton, consisting of 810 shares of common stock.

On September 15, 1937, Glanton, which was engaged in the business of manufacturing veneer in North Carolina, suffered a disastrous fire which destroyed substantially all of its operating properties. On September 23, 1937, its board of directors unanimously adopted a resolution that Glanton "be immediately dissolved as provided by law under section #1182, N.C. Code of 1935." The officers of the corporation were directed "forthwith" to secure the unanimous consent of the stockholders and to take all necessary and proper steps to legally effect the dissolution "forthwith."

It was the intention of the directors of Glanton to discontinue operations immediately; to secure immediate written

consent of all the stockholders of Glanton to the dissolution in conformity with the statutes of North Carolina; to wind up the company affairs; to collect all claims and other assets; to pay all debts and all outstanding claims; to distribute the remainder of the money pro rata to the stockholders of Glanton as soon as this could be done under the laws of North Carolina without personal liability to the directors for unpaid claims; and to have the stock certificates of Glanton returned and cancelled.

All of the stockholders consented to the dissolution, their written consents being filed October 4, 1937, with the Secretary of State of North Carolina. The consents expressly agreed "to the dissolution of said corporation and the termination of the corporation's existence and our connection therewith as stockholders as provided by the laws of the State of North Carolina."

The Secretary of State of North Carolina issued a final certificate of dissolution of Glanton on December 28, 1937. The directors knew that under North Carolina law, acting as trustees it would be necessary for them to continue the existence of the corporation for three years after the issuance of such certificate, or until December 28, 1940, before a distribution could be made to the stockholders without creating in themselves a liability for unpaid outstanding claims.

Cash was realized by the trustees, principally from the collection of notes and accounts receivable, as follows:

Year ended November 30, 1938.. $18,103.93
Year ended November 30, 1939.. 6,958.79
Year ended November 30, 1940.. 1,332.32
Year ended November 30, 1941.. 861.80
Subsequent years ............ None

The item of $861.80 represented a final dividend on accounts due from an insolvent company. No bank deposits were made subsequent to this date. The last claim against Glanton was paid sometime prior to November 30, 1940. All certificates of Glanton's capital stock were delivered to the trustees during November and December, 1942, and thereupon "cancelled as of December 28, 1937."

At a meeting held on December 28, 1940, the directors of Glanton passed a resolution stating that all accounts and claims owing to the company had been collected, and directing and authorizing the officers to distribute in full to the stockholders all moneys in possession of the dissolved corporation. The resolution stated that, on the final distribution, "the officers and directors are fully discharged and all the affairs of the company closed."

The distributions in liquidation made to the shareholders of Glanton by its trustees, and the amounts received by petitioner as holder of 655 shares of Glanton's stock, were as follows:

| | Total distributions made | Received by petitioner |
|---|---|---|
| December 10, 1937 | $24,300.00 | $19,650.00 |
| May 5, 1938...... | 12,150.00 | 9,825.00 |
| April 25, 1939..... | 8,100.00 | 6,550.00 |
| January 11, 1941.. | 6,597.05 | 5,334.65 |
| Total ....... | $51,147.05 | $41,359.65 |

The above facts, which were stipulated, were included in the findings of fact of the Tax Court. The Tax Court sustained the Commissioner's determination of deficiency and disallowance of the deduction claimed, on the ground that under § 112(b) (6), Int.Rev.Code, 26 U.S.C.A. Int.Rev. Code, § 112(b) (6),[1] no loss was permitted to be recognized.

---

[1] Section 112(b) (6), in its pertinent portions, reads as follows:

"No gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation. For the purposes of this paragraph a distribution shall be considered to be in complete liquidation only if —

"(A) the corporation receiving such property was, on the date of the adoption of the plan of liquidation, and has continued to be at all times until the receipt of the property, the owner of stock (in such other corporation) possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and the owner of at least 80 per centum of the total number of shares of all other classes of stock (except nonvoting stock which is limited and preferred as to dividends),

■ Petitioner contends that the liquidation of Glanton does not fall within the provisions of § 112(b) (6) (D), for the reason (1) that no plan of liquidation existed, and (2) that if such a plan did exist it did not specify, as required by the statute, that the transfer of all the property was to be completed within three years from the close of the taxable year during which the first of the series of distributions under the plan was made. It is conceded that the distributions actually were concluded during this period. Petitioner owned 80% of Glanton's stock, and in other respects the transaction falls within the statute. The facts as to the prompt disposal of the corporate assets and the limited character of the corporation's business during the period subsequent to the resolution authorizing immediate dissolution are uncontroverted. The cash distribution to the stockholders constitutes property within § 112(b) (6). Tri-Lakes S. S. Co. v. Commissioner, 6 Cir., 146 F.2d 970.

■■ We have little difficulty in concluding that the Tax Court ruled correctly that a plan of liquidation existed within the meaning of the statute. A plan is a method of putting into effect an intention or proposal. The statute does not require a formal plan. Here the proposal was the liquidation, and the method proposed of effecting the liquidation was the plan. The express provisions of the resolutions directing that the corporation "be immediately dissolved" and ordering the officers to take all necessary and proper steps to that end, under the North Carolina statutes which supply the details of procedure, together with the circumstances surrounding the liquidation, were pertinent evidence not only that there was an intention to dissolve the corporation, but that there was in fact an orderly method of liquidation contemplated. Cf. Service Co. v. Commissioner of Internal Revenue, 8 Cir., 165 F.2d 75.

■ Also we think that the statutory requirements that the liquidation is to be in accordance with a plan under which the liquidation is to "be completed within three years from the close of the taxable year during which is made the first of a series of distributions under the plan" is satisfied. The statute does not require a formal statement to this effect; but it was present here by necessary implication, in the various resolutions of the directors and stockholders.

While we are not bound by the decisions of the Tax Court, we think that its interpretation of § 112(b) (6) in Roach v. Commissioner, 4 T.C. 1255, is pertinent and persuasive. In that case the resolutions did not provide unequivocally, as here, for immediate liquidation; but the testimony showed that the plan in fact required that the liquidation be carried out immediately. The Tax Court held that a plan to liquidate immediately necessarily means that the liquidation will be undertaken at once, and that at the very least the word "immediately" signifies that the liquidation is to be completed well within the statutory period.

It would have been impossible, under the circumstances of this case, and often it would be impossible in cases of liquidation, for the directors to set a definite time schedule of distribution and liquidation, and adhere to it without change. They could not usually ascertain in advance the precise date when all items due would be

and was at no time on or after the date of the adoption of the plan of liquidation and until the receipt of the property the owner of a greater percentage of any class of stock than the percentage of such class owned at the time of the receipt of the property; and

"(B) no distribution under the liquidation was made before the first day of the first taxable year of the corporation beginning after December 31, 1935; and either

\* \* \* \* \* \* \* \*

"(D) such distribution is one of a series of distributions by such other corporation in complete cancellation or redemption of all its stock in accordance with a plan of liquidation under which the transfer of all the property under the liquidation is to be completed within three years from the close of the taxable year during which is made the first of the series of distributions under the plan, except that if such transfer is not completed within such period, or if the taxpayer does not continue qualified under subparagraph (A) until the completion of such transfer, no distribution under the plan shall be considered a distribution in complete liquidation."

218

collected from their debtors, solvent and insolvent, and the precise dates of possible distribution. While the statute makes completion within the statutory period mandatory, it does not require, and as a practical matter could not wisely require the plan to specify the precise time of completion.

The resolution providing for liquidation referred to § 1182 of the North Carolina Code of 1935, and adopted this section by reference. This supplies in detail the method of voluntary dissolution, and is followed by § 1193 and § 1194, which provide that the corporate existence shall be continued for three years for the settlement of corporate affairs, and bestow upon the directors the general powers of trustees in winding up the business of the corporation. In view of these statutes and the express statements of an intention to liquidate "immediately" and "forthwith," there is a clear statement of purpose to liquidate as soon as possible, and within the statutory period. Since the liquidation was actually completed within that time, all requirements were complied with.

Petitioner also contends that it did not comply with Treasury Regulations 103, § 19.112(b) (6)-1, -2, -3, -4 and -5, promulgated under this section, which in speaking of the plan of liquidation says that it "shall include a statement showing the period within which the transfer of the property of the liquidating corporation to the recipient corporation is to be completed." We think that the Regulations were satisfied here, just as the statute was satisfied. Under the Regulations the statement of the time limitation need not be formal. An informal statement was implied in the various resolutions introduced in evidence. There was, in our opinion, no question of waiver of the Regulations by the Commissioner. If the petitioner had in fact failed to comply with the Regulations, we agree with the Tax Court that it cannot obtain a tax advantage by its own failure to observe the law. Cf. Service Co. v. Commissioner of Internal Revenue, supra.

The decision of the Tax Court is affirmed.