J. PAUL MCDANIEL AND MARY C. MCDANIEL, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 41415. Filed November 22, 1955.

*John W. Oast, Jr., Esq.,* for the petitioners.
*A. Russell Beazley, Jr., Esq.,* for the respondent.

OPINION.

MULRONEY, *Judge:* Under section 115 (c) of the Internal Revenue Code of 1939, amounts distributed in partial liquidation of a corporation are treated as in part or full payment in exchange for stock. A partial liquidation, as defined in section 115 (i), may be either a distribution by a corporation in complete cancellation or redemption of a part of its stock or one of a series of distributions in a complete cancellation or redemption of all or a portion of its stock.

It fairly appears from the taxpayer's petition that he alleges: (1) the $13,500 received in redemption of the stock was not taxable as a dividend because the nontaxable character of the income received by the corporation (proceeds of a life insurance policy) retained its nontaxable character when distributed to stockholders, and (2) the redemption payment was made in partial liquidation of the corporation. Petitioner, in his brief filed here, abandons the first contention.

Respondent's argument is in the main that the redemption payment was essentially a distribution of a taxable dividend because paid out of the corporation's earnings and profits. Very little is mentioned in respondent's brief concerning petitioner's second proposition, while petitioner, in his brief, relies entirely on section 115 (c) : that the redemption payments were distributions in partial liquidation of the corporation.

There is room for the operation of both sections 115 (c) and 115 (g). *Fred B. Snite,* 10 T. C. 523, affd. 177 F. 2d 819. In the cited case this language of Judge Arundell's in our opinion was quoted with approval by the Circuit Court (177 F. 2d at p. 822) :

Respondent insists it is now established law that the net effect of the transaction, rather than the motives and purposes of the corporation or its stockholders, is the test of taxability. It must be recognized that the net effect rationale inheres in a number of decisions. [Citations.] But all that this means is that no one factor is controlling. It surely does not mean that the mere existence of sufficient earnings and profits to cover the acquisition of the stock automatically

brings the transaction within the provisions of section 115 (g). If that were so, it would seem that practically no room would be left for the operation of the provisions of section 115 (c),[1] relating to distributions in partial liquidation. * * * All relevant factors must be considered in determining the net effect of the transaction.

The fact that the stockholder in a redemption transaction received a portion of the corporation's undistributed earnings and profits, only begins analysis. That fact alone will not make the redemption payment taxable as a dividend. As stated in the last cited case, all other "relevant factors must be considered." The question here is whether the redemption transaction was in good faith in partial liquidation of the corporation. If it was, the distribution would not ordinarily be taxable as a dividend. Sec. 115 (c); *John L. Sullivan*, 17 T. C. 1420, affd. 210 F. 2d 607; *Joseph W. Imler*, 11 T. C. 836. If it was not, then it was "essentially equivalent" to a dividend to the extent of earnings and profits, and taxable as such. Sec. 115 (g); *Samuel A. Upham*, 4 T. C. 1120. This question depends upon the facts of each individual case. *Estate of Charles D. Chandler*, 22 T. C. 1158 (on appeal C. A. 6); *L. M. Lockhart*, 8 T. C. 436.

Important factors in reaching a determination are the presence or absence of a bona fide business purpose for the redemption, the size of the corporate surplus at the time, past dividend policy, and any special circumstances bearing upon the distribution. *Estate of Charles D. Chandler, supra; Joseph W. Imler, supra.*

We conclude that the distributions made here to the petitioner were a partial liquidation. They were "one of a series of distributions" made by the corporation in "complete cancellation or redemption of all or a portion of its stock." Sec. 115 (i).

Over a period of several years leading up to the redemption of petitioner's stock the corporation, Nichols Bros., Incorporated, had undergone a consistent pattern of declining business accompanied by a gradual disposal of operating assets of the corporation. From 1941 through 1948, the corporate management pursued a policy that looked forward to complete liquidation of the business. It is true that the corporation never adopted any formal resolution of liquidation. This factor, though of some weight, cannot be decisive in determining the presence or absence of a corporate policy of liquidation. Liquidation is a question of fact. *Burnside Veneer Co.*, 8 T. C. 442, affd. 167 F. 2d 214; *John R. Roach*, 4 T. C. 1255; *W. F. Kennemer*, 35 B. T. A. 415, affd. 96 F. 2d 177. Nor is the length of time consumed inconsistent with the determination that the corporation was being liquidated. This is a matter properly left to the sound discretion of the directors. *Estate of Charles Fearon*, 16 T. C. 385; *R. D. Merrill Co.*, 4 T. C. 955.

---

[1] Erroneously quoted as 115 (g) in the Circuit Court opinion.

In 1940 the corporation had operating assets with a book value of $135,000. By the end of 1948, operating assets had dwindled, by reason of a series of sales over the years, to a book value of $7,294.19. This policy of gradual liquidation continued for several years after the redemption here in dispute. Operating assets at the end of 1953 had fallen to $1,879.88. In 1943, John F. McDaniel, father of the petitioner, who had been active manager of the corporation since 1909, retired, and the corporation redeemed his entire holding of stock. In July 1948, Charles K. Nichols, another of the original founders, also had his entire stock holdings redeemed, leaving petitioner, with 200 shares, the sole stockholder in the corporation.

In 1947, the year prior to the redemption, the corporation had received $50,161.30 as the proceeds from a life insurance policy on the life of J. F. McDaniel and in view of the declining operations of the corporation, there was no corporate need for such funds. These insurance proceeds constituted the bulk of the corporate surplus of $69,075.90 at the beginning of 1948. Two of the corporation's founders, who had long been active in its affairs, had completely terminated their interest in the corporation, one in 1943, the other in 1948, immediately prior to the redemption of petitioner's stock. All these factors, taken together, certainly indicate that the corporation was in good faith, since 1941, pursuing a policy of gradual liquidation. Redemption of stock under these conditions is not, in our opinion, at such a time and in such a manner as to be essentially equivalent to a taxable dividend.

Petitioner's stock, upon redemption by the corporation in 1948, was subsequently carried on the books of the corporation as treasury stock. Section 115 (i), which defines partial liquidation, requires a "complete cancellation or redemption" of stock. The question arises whether stock carried on the books of the corporation as treasury stock qualifies as a "complete cancellation or redemption" of such stock. While there may be some dispute as to the proper accounting treatment of stock redeemed by a corporation, we feel that for tax purposes the question of whether stock may be regarded as redeemed must depend upon attendant circumstances. Undue emphasis should not be placed upon the mere act of canceling or retiring redeemed shares. Such an approach would prove inflexible, and we do not believe it is required by the Code. *Wall* v. *United States*, 164 F. 2d 462; *Reynolds Tobacco Co.* v. *Commissioner*, 97 F. 2d 302.

As noted above, the structure and operations of the corporation had been undergoing contraction for several years prior to the redemption. The years 1945, 1947, and 1948 revealed losses; by July 1948, two of the original founders of the corporation who had long been active in the conduct of its affairs had completely terminated all participation and ownership in the corporation, and operating assets

had dwindled considerably under a corporate policy of gradual liquidation. Viewed in the light of these facts, we believe that petitioner's shares were redeemed in 1948 with no intention on the part of the corporation to reissue such shares in the future. Moreover, section 115 (i) contemplates a difference between "cancellation" and "redemption." *James D. Robinson*, 27 B. T. A. 1018, affirmed on another issue 69 F. 2d 972. We conclude that petitioner's stock reacquired here by the corporation with no intention on the part of the corporation to reissue such stock may be regarded as "redeemed" even though kept on the books as treasury stock. *James F. Boyle*, 14 T. C. 1382, affd. 187 F. 2d 557, certiorari denied 342 U. S. 817.

Respondent, in his argument that no partial liquidation existed here, cites *Pullman, Inc.*, 8 T. C. 292. That case is distinguishable on its facts for there we held the distribution was not a partial liquidation. Respondent also quotes at length from *Commissioner* v. *Roberts*, 203 F. 2d 304. While we agree with the reasoning in that case, we do not see how it helps the respondent here. That case pointed out that the corporation had on hand an unnecessary accumulation of cash; that the corporation did not intend to liquidate or contract its business; that the redemption served no business purpose of the corporation and that the "net effect" of the redemption was to distribute to the taxpayer the earnings of the corporation in the same manner as if a cash dividend had been declared. We have found in the present case that the corporation did intend to liquidate its business and that the redemption, viewed in the light of the contracting corporation's operations, served a real business purpose of the corporation. As for the "net effect" test of a redemption mentioned in the *Roberts* case, as well as in several other cases, we regard it as no more than an expression of the rule that a determination under section 115 (g) must depend upon all the circumstances of each case.

We hold that the distribution to petitioner in the redemption of his stock in 1948 was a partial liquidation within section 115 (c) and that there was not a distribution essentially equivalent to a dividend.

*Decision will be entered for the petitioners.*

