BARKLEY COMPANY OF ARIZONA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Barkley Co. of Arizona v. Commissioner
Docket No. 6954-85.
United States Tax Court
T.C. Memo 1988-324; 1988 Tax Ct. Memo LEXIS 352; 55 T.C.M. (CCH) 1347; T.C.M. (RIA) 88324; July 27, 1988. *352 P Corp. was experiencing liquidity problems due to business difficulties and the death of B, its managing stockholder. A sister corporation of P, W, that held real estate for investment, was a likely source of the needed capital. W's stock had a stepped-up fair market value basis because it was held by B's estate. All of W's stock was contributed to P. W sold two parcels of land and distributed the proceeds to P. Subsequently, P and all of its subsidiaries, including W, adopted a plan of liquidation under sec. 337, I.R.C. 1954. W sold three more of its properties and distributed the proceeds to P. Shortly thereafter, P revoked its plan to liquidate, leaving W's liquidation plan intact. W was then liquidated, distributing its remaining properties to P. P, in consolidated returns with W, reported the sales using a fair market value basis in W's properties. Held,sec. 332, I.R.C. 1954, applies to the liquidation of W, because W was a more than 80 percent owned subsidiary of P and the plan called for completion of W's liquidation within 3 taxable years, notwithstanding W's failure to completely comply with the application regulations. Burnside Veneer Co. v. Commissioner,8 T.C. 442 (1947), *353 affd. 167 F.2d 214 (6th Cir. 1948) followed. Held further,sec. 337, I.R.C. 1954, does not apply to grant nonrecognition to sales of properties by W because sec. 332, I.R.C. 1954, applies. Sec. 337(c), I.R.C. 1954. Held further, the basis adjustment to W's properties was improper, because sec. 1014, I.R.C. 1954, only applies to W's stock. Peter C. Guild, for the petitioner. Patricia Beary, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, in a statutory notice of deficiency dated December 21, 1984, determined deficiencies in petitioner's Federal income taxes of $ 702,487 and $ 25,877 for the taxable years ended March 31, 1981, and March 31, 1982, respectively, and an addition under section 6651(a) [1] *354 of $ 57,844 for the taxable year ended March 31, 1981. After concessions, the remaining issue left for our consideration is whether section 332 or section 337 governs land sales by petitioner's wholly owned subsidiary, Western Arizona Development Corporation, and the subsequent liquidation of the subsidiary into petitioner. FINDINGS OF FACT The stipulated facts and exhibits are incorporated herein by this reference. [2] Petitioner, Barkley Company of Arizona, is a corporation that was organized under the laws of the State of Arizona in 1965. It has a fiscal year ending March 31. Western Arizona Development Corporation (WADC) was a corporation organized under the laws of the State of Arizona in 1971. It also had a fiscal year ending March 31. At all pertinent times, petitioner was engaged in the business of farming. WADC held agricultural property for investment, rental income and value appreciation. At the time of its incorporation, petitioner had two shareholders, L. P. Barkley, who received all the voting preferred stock and James F. Barkley (Barkley), who received all the common stock. Each shareholder held 10,700 shares of stock and the issues were equal in value. L. P. Barkley was James F. Barkley's *355 father. At the time of its incorporation, WADC had four nominal shareholders, only one of which, James F. Barkley, had made any capital contribution. [3]
James F. Barkley dies on August 21, 1979. Apparently, relations between L. P. Barkley and the heirs of James F. Barkley were acrimonious following Barkley's death. [4] *356 *357 After Barkley's death, petitioner owned the Crocker Bank of California approximately $ 12 million. It was unable to service this debt through its operations due to losses incurred in its business of growing lettuce. The bank became concerned about the debt and, consequently, started monitoring petitioner's activities closely. L. P. Barkley, personal representative of Barkley's estate (the estate), refused to cooperate in any plans to alleviate petitioner's then existing financial distress. Although petitioner was the parent corporation of a number of subsidiaries, only its sister corporation, WADC, had any salable assets that could be used to reduce the debt. It became necessary to infuse capital from WADC to petitioner, preferably *358 at the lowest tax cost, and a plan was developed by petitioner's accountants. [5] On March 28, 1980, Louise Barkley (Mrs. Barkley), Barkley's widow, contributed the then outstanding shares of WADC to petitioner, thereby making WADC a wholly owned subsidiary of petitioner. After being acquired by petitioner, WADC sold two pieces of property, as follows: [6]
Net
Name
Date of Sale
Sales Price
Basis
South Heath
4/23/80
$ 365,112
300,000
North Heath
6/27/80
364,754
160,084
Net cash sales proceeds of $ 585,722 were transferred to or for the benefit of petitioner and a corresponding account payable to WADC was entered on petitioner's books for that amount. The conflict among petitioner's shareholders *359 and offices continued through the spring of 1980. L. P. Barkley, in his capacity as the estate's representative, refused to vote for a plan to liquidate petitioner and its subsidiaries after a sale of assets. By a settlement agreement dated June 3, 1980, L. P. Barkley stepped down as personal representative of Barkley's estate and as a director of petitioner. On July 11, 1980, petitioner and all of its subsidiaries, including WADC, resolved to liquidate pursuant to a plan of complete liquidation under section 337. All corporate assets were to be distributed no later than 12 months following the date of the resolution. Three pieces of property were sold by WADC after the resolution to liquidate, as follows: Net
Name
Date of Sale
Sales Price
Basis
Bretz
10/17/80
$ 2,195,196
$ 991,779
Vaughn
1/1/81
120,000
150,000
Box Car
1/1/81
139,505
45,724
Net cash proceeds $ 1,360,942 and a $ 100,000 promissory note were transferred to or for the benefit of petitioner from the three sales, and a corresponding account payable to WADC was entered on petitioner's books. On or about March 16, 1981, petitioner and two of its subsidiaries abandoned and revoked their plan to liquidate, leaving the rest of the subsidiary *360 corporations (including WADC) liquidation plans intact. Apparently, plans to sell the assets of petitioner and its subsidiaries did not materialize. On June 30, 1981, WADC transferred the remaining three parcels of realty to petitioner in a liquidating distribution. The Estate of James F. Barkley filed a Form 706, United States Estate Tax Return, in August 1980. The estate treated the outstanding shares of WADC as being owned 100 percent by James F. Barkley as community property and reported the value of its interest in WADC stock as one-half of $ 1,024,133, or $ 512,066,50, computed as follows: Fair Market Value of WADC Assets (Land)
$ 3,224,023 Less Stockholder's Equity
(21,968)
Less Amounts Due from Stockholders [7]
(15,000)
Less Book Value of Land
(2,162,922)
Total
$ 1,024,133 The Internal Revenue Service estate tax examiner determined the fair market value of WADC's assets as of the decedent's death at $ 3,627,025 rather than the figure reported. This determination increased the overall value of WADC's outstanding stock by $ 403,002, one-half of which was included in Barkley's estate for estate tax purposes. *361 On its consolidated income tax returns for 1980 and 1981, petitioner (through WADC) reported taxable gains on the sales of the properties, using as its basis the adjusted basis of the properties in the hands of WADC. For the taxable year ended March 31, 1981, petitioner made an upward basis adjustment in the amount of $ 730,182, reflecting the difference between the date of death fair market value of the WADC stock and the basis of the five properties in WADC's hands. Respondent determined this adjustment was not allowable. On its consolidated return for 1982, petitioner reported no gain with respect to the final liquidating distribution from WADC. OPINION The basic point of contention between the parties is whether section 332 or 337 governs the sale of properties and liquidation by WADC. In general, if section 337 governs, the sales of properties would be nontaxable and petitioner would recognize no gain upon the liquidating distribution because its basis in the WADC stock would equal the date of death value of the properties. Under section 332, the property sales would be taxable to WADC (without "basis adjustment") and petitioner would be subject to a carryover basis in the *362 cash proceeds and remaining properties. We agree with respondent that the five property sales are taxable, and that petitioner must abide by the form in which it, or its advisers, executed the transaction. while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not * * * and may not enjoy the benefit of some other route he might have chosen to follow but did not. "To make the taxability of the transaction depend upon the determination whether there existed an alternative form which the statute did not tax would create burden and uncertainty." [Citations omitted; Commissioner v. National Alfalfa Dehydrating & Milling Co.,417 U.S. 134, 149 (1974).]
The Supreme Court's rationale seems particularly apt here, where it appears petitioner may have taken the first step apparently without considering the appropriate prerequisites necessary to achieve the desired tax result. Section 332 of the Code provides for nonrecognition treatment upon the liquidation of an 80-percent-owned subsidiary into its parent corporation. No gain or loss is recognized to the parent upon liquidation *363 of its subsidiary if the following conditions are met: (1) the corporation receiving such property [from the subsidiary] was * * * the owner of stock (in such other corporation) possessing at least 80 percent [of the voting power and value] * * * and either (2) the distribution is by such other corporation in complete cancellation or redemption of all its stock, and the transfer of all the property occurs within the taxable year * * * or (3) such distribution is one of a series of distributions by such other corporation in complete cancellation or redemption of all its stock in accordance with a plan or liquidation under which the transfer of all the property under the liquidation is to be completed within 3 years from the close of the taxable year [following the first distribution] * * * If such transfer of all the property does not occur within the taxable year, the Secretary may require of the taxpayer such bond, or waiver of the statute of limitations on assessment and collection, or both, as he may deem necessary to insure * * * the assessment and collection of all income taxes * * * [Sec. 332(b).]
The section clearly applies to petitioner. It owned 100 percent of WADC, and the *364 plan of liquidation in the resolution called for completion within 1 year of July 11, 1980, within the 3-year period contemplated by section 332(b)(3). Petitioner argues that the notification and waiver of the status of limitations requirements in sections 1.332-4 and 1.332.-6, Income Tax Regs., have not been met. Thus, section 332 cannot apply because the liquidation did not occur within the taxable year. We have rejected similar arguments under a similar version of this provision in the Internal Revenue Code of 1939. Burnside Veneer Co. v. Commissioner,8 T.C. 442 (1947), affd. 167 F.2d 214 (6th Cir. 1948). "This provision was never intended to permit a parent corporation * * * to fail to comply with the regulations and set up such failure in order to [circumvent the statute]. Obviously, in such an instance, regulations promulgated to insure collection of revenue have no application and can be waived." Burnside Veneer Co. v. Commissioner,8 T.C. at 449. See also Cherry-Burrell Corp. v. United States,367 F.2d 669 (8th Cir. 1966); International Investment Corp. v. Commissioner,11 T.C. 678 (1948), affd. 175 F.2d 772 (3d Cir. 1949), Service Co. v. Commissioner, a Memorandum Opinion *365 of this Court dated March 18, 1947, affd. 165 F.2d 75 (8th Cir. 1948). Cf. George L. Riggs, Inc. v. Commissioner,64 T.C. 474 (1975), where we held that section 332 could be avoided by an intentional failure to meet the statutory 80-percent ownership, which is a mandatory statutory prerequisite. Section 332 has no application to the sale of corporate assets. Thus, in the absence of other specific statutory authority, the normal rules of realization and recognition apply. See section 1001. Section 337 does provide, in certain specified circumstances, for nonrecognition treatment upon liquidating sales of corporate assets. Section 337(a), in pertinent part, provides that if a corporate liquidation is completed with 12 months after the adoption of the plan of liquidation, no gain or loss is recognized upon sales of its assets made after adoption of the plan. The first two sales of real estate were completed before the plan of liquidation was adopted. Thus, section 337 cannot apply to those sales. See section 1.337-1, Income Tax Regs. With respect to the sales of the three properties completed after the plans of liquidation were adopted, section 337(a) could apply. However, under *366 section 337(c)(2)(A), section 337 is not applicable to sales and exchanges by subsidiaries in conjunction with a section 332 liquidation. [8] Thus, WADC must recognize taxable gain upon all five sales of its properties. In addition, even though section 1014 provides a step-up in basis of the WADC stock, no such step-up is provided for property held by WADC, and WADC must recognize the full amount of taxable gain. Petitioner argues that section 337 should be applied, notwithstanding section 337(c)(2), to avoid an unconscionable "double tax" upon WADC's liquidation. Petitioner asserts that "double" income and estate taxation was not intended by Congress (or petitioner) in this situation. Petitioner argues that the transaction should *367 be recast as a section 337 liquidation of WADC followed by a contribution of its assets to petitioner, and that we should look to the substance rather than the form of the transaction. Gregory v. Helvering,293 U.S. 465 (1935). Petitioner argues that we should ignore the contribution of WADC stock by Mrs. Barkley to petitioner. Petitioner cites Manilow v. United States,315 F. Supp. 28 (N.D. Ill. 1970), and Kamis Engineering Co. v. Commissioner,60 T.C. 763 (1973), for the proposition that courts will disregard the form of a transaction if it produces two levels of tax, corporate and shareholder, in situations where Congress only contemplated one level of tax at the shareholder level. These two cases involved simultaneous liquidations of parent and subsidiary corporations. Respondent in these cases unsuccessfully attempted to impose a tax upon the subsidiary's sale of its assets, under sections 1001 and 337(c)(2), and upon the parent corporation's shareholder's receipt of the proceeds, under section 331. Subsequently, Congress legislatively obviated the need for a judicial solution by enacting section 337(c)(3), allowing section 337 to apply to simultaneous parent-subsidiary liquidations. *368 [9]
Unlike the situations presented by Manilow v. Commissioner, supra, and Kamis Engineering Co. v. Commissioner, supra, we are convinced that the result urged by respondent in this case was congressionally intended. The purpose of section 337 was to ensure a single level of tax in connection with the liquidation of a corporation. Thus, liquidating sales by a corporation would be treated the same as distributions by a corporation followed by sale of the distributed assets. Section 337 was enacted following the Supreme Court opinions in Commissioner v. Court Holding Co.,324 U.S. 331 (1945), and United States v. Cumberland Public Service Co.,338 U.S. 451 (1950), to ensure the incidence of one level of tax of these essentially identical transactions. Although petitioner's intentions were unclear, it appears that the tax benefits of both the stepped-up basis of section 1014 and section 337 liquidation were attempted with respect to the WADC stock. The end result is that Mrs. Barkley and the estate were entitled to the step-up *369 in basis which applies to the shares of stock in the corporation but not to the basis of the underlying corporate assets. It is true that this transaction could have been structured so as to avoid the current incidence of any Federal income tax. Petitioner, however, must abide by the form in which its transaction was structured. Commission v. National Alfalfa Dehydrating and Milling Co.,417 U.S. 134, 149 (1974). The sequence of events here were unorthodox and confusing relative to "textbook" tax planning techniques.[10] *370 WADC stock may have been contributed in the mistaken belief that section 334(b)(2) applied to step-up the basis in the assets to petitioner's basis in the stock. [11] If so, the contribution of WADC stock was a basic error that initially limited the options available to petitioner, including obtaining the benefits of section 1014 through a section 337 liquidation. Once section 332 applies to WADC's liquidation, section 337 would not apply unless petitioner was also liquidated. See section 337(c). At the outset, there were two ways to infuse the required capital from WADC to petitioner -- a contribution of stock or a contribution of assets. Having made the choice, petitioner is not now permitted to avoid the unintended tax consequences. To reflect concessions of the parties, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years at issue. All rule references are to the Tax Court Rules of Practice and Procedure. 2. In an earlier opinion concerning this case, Barkley Co. of Arizona v. Commissioner,89 T.C. 66↩ (1987), we held that pleadings in a malpractice action by petitioner against its accountants were not admissible in evidence. 3. The other three shareholders contributed promissory notes, prohibited under Arizona law. Ariz.Rev. Stat. Ann. sec. 10-019.B (1977). These shares were void from the date of issuance. Ettlinger v. Collins,25 Ariz. 115, 213 P. 1002↩ (1923). 4. Petitioner's pleadings state as follows: The death of Jim Barkley * * * precipitated a power struggle over the control of Petitioner which severely compounded [its] financial problems * * *. Shortly after Jim Barkley died L. P. Barkley, as personal representative of Jim Barkley's estate, took the position that under the laws of the State of Arizona he was entitled to vote all the shares of common stock of Petitioner subject to probate, including those held by Louise Barkley as community property. Whether or not such position was legally accurate, he did have the right to vote at least 50% of the shares of common stock of Petitioner. Consequently, he could block any corporate act requiring [shareholder approval and] [s]uch power was repeatedly used to the detriment of Petitioner. During these difficult times Petitioner's management tried a variety of different tacts to solve Petitioner's financial crisis. Repeatedly, L. P. Barkley used his position as personal representative to block remedial efforts. As an example, at on point it was proposed that certain land owned by [WADC], a subsidiary of Petitioner at the time, be sold to pay off some of the Crocker Bank indebtedness. L. P. Barkley refused to authorize the sale until all 355 of the issued and outstanding shares of common stock of Consolidated Farms Co., Inc. was transferred to him. As Petitioner was desperate for the funds, Louise Barkley an Petitioner's management had to submit to such demands. Such conduct made it clear * * * that L. P. Barkley had to be removed as the personal representative * * *. * * * * * * L. P. Barkley was 81 years old and already had been retired from active management of Petitioner's farming operation for 20 years. He had no understanding of Petitioner's business or the magnitude or gravity of its problems. His small farm philosophy was that they should farm their way out of their problems or sell every last acre. The situation was further exacerbated by the estranged relations between L. P. Barkley and the officers of Petitioner, including his daughter-in-law Louise Barkley and his grandson Robert Barkley. [Petitioner's financial problems forced it into the settlement agreement pursuant to which L. P. Barkley stepped down as personal representative of the estate.] 5. We cannot tell from the record what this original plan entailed. We can only conclude that (1) it changes a number of times subsequent to the original, and (2) it involved transferring the benefit of the step-up in basis provided in sec. 1014↩ for decedent Barkley's WADC stock to the land held by WADC. 6. Apparently, following extensive negotiations, L. P. Barkley authorized the real property sale only after petition transferred all the shares of another corporation to L. P. Barkley (in his personal capacity).↩
7. This is apparently the promissory notes issued by the other three shareholders.↩
8. Section 337(c)(2) provides that: In the case of a sale or exchange following the adoption of a plan of complete liquidation, if section 332 applies with respect to such liquidation, then -- (A) if the basis of the property of the liquidating corporation in the hands of the distributee is determined under section 334(b)(1), this section shall not apply * * *. Sec. 334(b)(1) generally provides a carryover basis for properties acquired in sec. 332↩ liquidations. 9. The simultaneous liquidation of parent and subsidiary is not involved here. The plan to liquidate petitioner was adopted, but later abandoned and revoked. ↩
10. There are a number of actions taken by petitioner that are inexplicable, at least from a tax standpoint. These include, among others, setting up account payables from WADC to petitioner for what purportedly were liquidating distributions and making two concededly taxable sales prior to adoption of the plans of liquidation. 11. Petitioner amended its petition to allege that a sec. 337↩ liquidation was contemplated the entire time. However, the original pleadings allege that the contribution of WADC stock to petitioner was made in the mistaken belief that sec. 334(b)(2) applied to step-up the basis in the WADC assets.